IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs June 2, 2004

## MARCUS EPPS v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Shelby County**
**No. P-27216     W. Otis Higgs, Jr., Judge**

_____

**No. W2004-00152-CCA-R3-PC  - Filed July 12, 2004**

_____

The Petitioner, Marcus Epps,[1] pled guilty to second-degree murder, three counts of aggravated assault, two counts of attempted especially aggravated robbery, reckless endangerment, and unlawful possession of more than 0.5 grams of a controlled substance with intent to sell. The trial court sentenced the Petitioner to fifteen years in prison at 100 percent for the second-degree murder conviction and ordered that the other sentences, which were of shorter duration, run concurrently to the fifteen-year sentence. The Petitioner filed a petition seeking post-conviction relief, alleging that his attorney was ineffective for: (1) failing to explain the lesser-included charge of facilitation of felony murder; (2) denying to the Petitioner the right to testify at his motion hearing; and (3) depriving the Petitioner of his right to a speedy trial. Following a hearing, the post-conviction court dismissed the petition. Finding no error, we affirm the post-conviction court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which DAVID H. WELLES and DAVID G. HAYES, JJ., joined.

Lance Chism, Memphis, Tennessee, for the appellant, Marcus Epps.

Paul G. Summers, Attorney General and Reporter; Thomas E. Williams, III, Assistant Attorney General; William L. Gibbons, District Attorney General; David Zak, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**I. Facts**

---

[1]In his post-conviction hearing, Marcus Epps stated that his full name was "Jewon Epps, Sr."

In 1997, a Shelby County grand jury indicted the Petitioner on the following counts: three counts of aggravated assault, Tennessee Code Annotated section 39-13-102; unlawful possession of more than 0.5 grams of a controlled substance with intent to sell, Tennessee Code Annotated section 39-17-417; first-degree murder, Tennessee Code Annotated section 39-13-202; murder in the perpetration of a felony, Tennessee Code Annotated section 39-13-202; two counts of attempt to commit especially aggravated robbery, Tennessee Code Annotated section 39-12-101; and, reckless endangerment, Tennessee Code Annotated section 39-13-103.

On July 17, 2002, the Petitioner pled guilty to second-degree murder, three counts of aggravated assault, unlawful possession of a controlled substance with intent to sell, attempt to commit aggravated robbery, and reckless endangerment. Before accepting the Petitioner's guilty plea, the trial court called him to testify. The Petitioner stated that he understood the potential prison term and that he was satisfied with his counsel, Michael Scholl ("Counsel"). The trial court then sentenced the Petitioner to fifteen years at 100 percent for second-degree murder, four years for each count of aggravated assault, eight years for unlawful possession of a controlled substance, twelve years for each count of especially aggravated robbery, and two years for reckless endangerment. The trial court ordered all of the sentences to run concurrently.

On March 18, 2003, the Petitioner filed a petition for post-conviction relief, alleging ineffective assistance of counsel. The post-conviction court assigned the Petitioner an attorney to represent him in the post-conviction matter, and this attorney filed an amended petition.

At the October 2, 2003, hearing on the amended post-conviction petition, the Petitioner testified that Counsel did not explain the natural and probable consequences rule to him as it related to the murder charge.[2] He said that he did not know that he could be convicted of a lesser-included offense, such as felony murder, reckless homicide, or negligent homicide. The Petitioner stated that he would have gone to trial if he had known this information. He said that Counsel did not permit him to testify at a hearing to suppress the Petitioner's confession to police because the State was extensively questioning the Petitioner's co-defendant, who had confessed that both men participated in the alleged crimes. The Petitioner stated that police tricked him into signing and initialing a confession.

The Petitioner testified that police arrested him on July 17, 1997, and he did not plead guilty until July 17, 2002. He stated that he asked Counsel to move for a speedy trial in 1999. The Petitioner said that the lengthy incarceration time made him feel as though he had "no hope." He noted that Counsel did not interview his co-defendant. The Petitioner stated:

> [Counsel] came to see me about four or five times, but basically, I would see him if
> I was able to come from downstairs coming up to the courtroom. My parents would

---

[2]Under this theory, a jury could have convicted the Petitioner only if it believed that the victim's death was the natural and probable result of the Petitioner's complicity in the murder.

let him know that I wanted to talk to him, and he would come back and see me for a couple of minutes.

The Petitioner said that he never received a discovery packet, and he did not discuss his sentence with Counsel. He stated that Counsel did not inform him that the victim's death from pneumonia could be an intervening cause to the murder charge. The Petitioner explained that he told Counsel that he wanted to go to trial, and Counsel responded by saying that he would lose. Upon questioning by the post-conviction court, the Petitioner said that he pled guilty because the plea bargain offered a shorter sentence than life without parole, to which the trial court could have sentenced him had he been convicted of first-degree murder.

On cross-examination, the Petitioner noted that the death penalty was also a possible sentence. The Petitioner stated that he did not know of his right to testify at the suppression hearing. He said that he could remember conversations with Counsel, and he could not remember his co-defendant's testimony at the suppression hearing. He stated that the trial court appointed Counsel after his request to replace his first appointed attorney. The Petitioner conceded that the trial judge asked him four different times if he understood the ramifications of his guilty plea. He stated that he had not read the confession. He said that the police officers did not threaten him to sign the document.

On redirect examination, the Petitioner testified that his co-defendant now disclaimed his past allegations, which implicated the Petitioner in the crime. The Petitioner stated that he received an affidavit from the co-defendant to this effect. He said that he misunderstood the trial court's questioning regarding his comprehension of his sentence. The Petitioner stated that he did not accept the trial court's offer to let him talk to his attorney because he was unaware that such an interruption in the proceedings could occur.

Counsel testified that he represented the Petitioner in his first-degree murder case. He stated that he explained legal principles to the Petitioner, though he did not phrase the discussions as "this is the law regarding natural and probable consequences." Counsel said that the law of criminal responsibility, coupled with the Petitioner's confession, made conviction more likely, and he informed the Petitioner of these difficulties. He stated that he did not pursue facilitation because the consequences could have been worse for the Petitioner. He explained the consequences that if the jury convicted the Petitioner of half of his other charges, then the Petitioner would receive twice as much sentence time as he received with the guilty plea. He stated that he mentioned several lesser-included offenses, such as reckless homicide, to the Petitioner, and he explained to the Petitioner that such lesser-included offenses would be difficult to "sell" to the jury because, to accept the lesser-included offenses, the jury would be forced to disregard the law. He testified:

I've handled over fifty murder cases . . . . I've seen all sorts of scenarios, and looking at [the Petitioner's] case, I thought the likelihood of conviction was extremely high, and not something that I think he would have been smart gambling with . . . .

[T]he facts of the case are that two men, both of who[m] have confessed to the crime or confessed to being out there, went out to a scene to rob people of drugs and drug money and shot a guy six times, and shot another guy once . . . . [I]n the process of the robbery, one of the guys was shot multiple times and died . . . .

There is nothing there that indicates to me it was some sort of reckless behavior. It indicates to me that there is a pretty good case for First Degree Murder in that situation.

Counsel stated that he did not want the Petitioner to testify because the co-defendant had essentially confessed again at the suppression hearing, and the judge was not restricting cross-examination in a way that would be favorable to the Petitioner. Counsel stated that he left the decision of whether to testify to the Petitioner. He said that, in discussions with the Petitioner, he likely raised the victim's pneumonia as a problematic piece of the State's case.

Counsel testified that, in April 2002, he filed a motion to dismiss the charges against the Petitioner based on the speedy trial issue. Counsel explained that, in his legal career, he had only suppressed two confessions of this nature, and he did not expect to suppress the Petitioner's confession. He stated that the Petitioner would have had problems if the trial started quickly with witnesses easily available. He explained: "My strategy is to poke as many holes and create as many avenues where there will be error in his case, so that if we do go to trial, there will be all sorts of avenues that [the Petitioner] has on appeal or post-conviction or whatever avenue he chooses." Counsel stated that the trial court took the motion to suppress under advisement for two years, and accelerating the court's ruling did not appear to be in the Petitioner's interests. Counsel noted that all of the witnesses were Hispanic, and he believed that the delay of the trial might cause some of the witnesses to be unavailable. He said that he gave names of possibly exculpatory leads to a hired investigator. He stated that he provided the Petitioner with discovery materials.

Counsel said that he met with the Petitioner approximately forty-two times. He testified that, during their meetings, they discussed strategy, including the trial delay. He stated that the Petitioner indicated more than once his desire to go to trial. Counsel said that, although he did not coerce the Petitioner into accepting the plea bargain, he advised the Petitioner to accept the plea. He testified that filing the motion for speedy trial prompted the State to offer a deal for twenty years in prison, and the sentence offer was eventually reduced to fifteen. Counsel also noted that, at this time, the co-defendant implicated the Petitioner as the shooter. Counsel testified that he had filed motions challenging the warrantless arrest of the Petitioner.

On cross-examination, Counsel stated that, at one point, the Petitioner had denied being at the scene of the crime. He conceded that pursuing a lesser-included offense would not be necessary if a defendant is claiming not to be at the scene. Counsel testified that the Petitioner essentially confessed to being the "get-away driver." Counsel opined that, based on Counsel's eleven years of practice, the Petitioner had received a good deal from the State. He stated that he did not tactically delay a trial as his first goal and that the strategy arose after the trial court began taking so long to

rule on the suppression motion. On questioning from the post-conviction court, Counsel stated that he told the Petitioner that the sentence would be fifteen years at 100 percent and that a fifteen percent reduction for good behavior was not a certainty.

On January 6, 2004, the post-conviction court found that the Petitioner failed to prove his allegations of ineffective assistance of counsel by clear and convincing evidence, and, therefore, dismissed the petition.

## II. Analysis

On appeal, the Petitioner contends that Counsel was ineffective for: (1) failing to explain the lesser-included charge of facilitation of felony murder; (2) denying the Petitioner the right to testify at his motion hearing; and (3) depriving the Petitioner of his right to a speedy trial. In order to obtain post-conviction relief, a petitioner must show that his or her conviction or sentence is void or voidable because of the abridgment of a constitutional right. Tenn. Code Ann. § 40-30-203 (1997). The petitioner bears the burden of proving factual allegations in the petition for post-conviction relief by clear and convincing evidence. Tenn. Code Ann. § 40-30-210(f). A post-conviction court's factual findings are subject to a de novo review by this Court; however, we must accord these factual findings a presumption of correctness, which is overcome only when a preponderance of the evidence is contrary to the post-conviction court's factual findings. Fields v. State, 40 S .W.3d 450, 456 (Tenn. 2001). A post-conviction court's conclusions of law are subject to a purely de novo review by this Court, with no presumption of correctness. Id. at 457.

The right of a criminally accused to representation is guaranteed by both the Sixth Amendment to the United States Constitution and Article I, section 9, of the Tennessee Constitution. State v. White, 114 S.W.3d 469, 475 (Tenn. 2003); State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999); Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). This right to representation includes the right to "reasonably effective" assistance. Burns, 6 S.W.3d at 461. The Tennessee Supreme Court has held that the issue of ineffective assistance of counsel is a mixed question of law and fact and, as such, is subject to a de novo review. Id.

In reviewing a claim of ineffective assistance of counsel, this Court must determine whether the advice given or services rendered by the attorney are within the range of competence demanded of attorneys in criminal cases. Baxter, 523 S.W.2d at 936. To prevail on a claim of ineffective assistance of counsel, a petitioner must show that "counsel's representation fell below an objective standard of reasonableness," Strickland v. Washington, 466 U.S. 668, 688 (1984), and that this performance prejudiced the defense, resulting in a failure to produce a reliable result. Id. at 687; Cooper v. State, 849 S.W.2d 744, 747 (Tenn. 1993). To satisfy the requirement of prejudice, a petitioner must show a reasonable probability that, but for counsel's unreasonable error, the fact finder would have had reasonable doubt regarding the petitioner's guilt. Strickland, 466 U.S. at 695. This reasonable probability must be "sufficient to undermine confidence in the outcome." Id. at 694; see also Harris v. State, 875 S.W.2d 662, 665 (Tenn. 1994). In cases involving a guilty plea or a plea of nolo contendere, the petitioner must show prejudice by demonstrating that, but for counsel's

errors, he would not have pleaded guilty but would have insisted upon going to trial. See Hill v. Lockhart, 474 U.S. 52, 59 (1985); Bankston v. State, 815 S.W.2d 213, 215 (Tenn. Crim. App. 1991).

When evaluating an ineffective assistance of counsel claim, the reviewing court should judge the attorney's performance within the context of the case as a whole, taking into account all relevant circumstances. Strickland, 466 U.S. at 690; State v. Mitchell, 753 S.W.2d 148, 149 (Tenn. Crim. App.1988). The reviewing court must evaluate the questionable conduct from the attorney's perspective at the time. Strickland, 466 U.S. at 690; Cooper, 849 S.W.2d at 746; Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982). In doing so, the reviewing court must be highly deferential and "should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Burns, 6 S.W.3d at 462. Counsel should not be deemed to have been ineffective merely because a different procedure or strategy might have produced a different result. Williams v. State, 599 S.W.2d 276, 279-80 (Tenn. Crim. App. 1980). The fact that a particular strategy or tactic failed or hurt the defense does not, standing alone, establish unreasonable representation. House v. State, 44 S.W.3d 508, 515 (Tenn. 2001) (citation omitted); Thomas Brandon Booker v. State, No. W2003-00961-CCA-R3-PC, 2004 WL 587644, at *4 (Tenn. Crim. App., at Jackson, Mar. 24, 2004), *no perm. app. filed.* However, deference to matters of strategy and tactical choices applies only if the choices are informed ones based upon adequate preparation. House, 44 S.W.3d at 515.

### A. Failure to Inform about Facilitation of Felony Murder

In the case under submission, the Petitioner alleges that he was denied effective assistance of counsel because Counsel did not explain the lesser-included offense of facilitation of felony murder. The post-conviction court found that the Petitioner failed to prove this allegation by clear and convincing evidence. Counsel testified that he generally explained lesser-included offenses to the Petitioner. He also stated that he discussed various weaknesses in the State's case with his client. He said that the two discussed the Petitioner's case approximately forty-two times.

Facilitation of felony murder, which the Petitioner alleges he would have sought at trial, and second-degree murder, to which the Petitioner pled guilty, are both Class A felonies. See Tenn Code. Ann. § 39-11-403(b); State v. Julius L. Jones, No. W2002-02336-CCA-R3-CD, 2003 WL 23100729, at *3 (Tenn. Crim. App., at Jackson, Dec. 30, 2003), *no perm. app. filed*. The Petitioner has offered no evidence to suggest why he would have chosen facilitation of felony murder over second-degree murder. We agree with the post-conviction court that the Petitioner failed to prove by clear and convincing evidence that he was denied effective assistance of counsel. This issue is without merit.

### B. Denial of Right to Testify at the Suppression Hearing

The Petitioner alleges that Counsel's ineffective assistance prevented him from testifying at

the hearing to suppress the Petitioner's confession.[3] Although this issue was not raised in either the original petition or the amended petition, this issue was raised during the post-conviction hearing. The post-conviction court found that the Petitioner failed to prove his allegation by clear and convincing evidence. The Petitioner claims that Counsel should have explained to him about the pros and cons of testifying at the suppression hearing. The Petitioner argues that, because he did not know he had a right to testify at the suppression hearing, his guilty plea was not entered into knowingly and voluntarily. Counsel testified that he left the decision of whether to testify to the Petitioner, who followed Counsel's advice and chose not to testify. In addition, Counsel stated that he advised the Petitioner not to testify after seeing the co-defendant reveal damaging information under cross-examination. From Counsel's perspective, the Petitioner could have similarly revealed damaging information if the trial court had already allowed certain types of questions. Accordingly, we cannot conclude that this representation fell below an objective standard of reasonableness. We conclude that the Petitioner failed to prove by clear and convincing evidence that he was denied effective assistance of counsel in this instance. This issue is without merit.

## C. Denial of Right to a Speedy Trial

The Petitioner contends that Counsel was ineffective for not asserting his right to a speedy trial. The post-conviction court made the following findings:

> At trial, counsel was asked why he waited until April 2002 to file a Motion to Dismiss, when the Petitioner was arrested in July 1997. Counsel testified at trial that he focused on three problems with the Petitioner's case: (1) The Petitioner confessed, and confessions are rarely suppressed; (2) the co-defendant, Dexter Warren, stated that the Petitioner was involved; and (3) there was physical evidence against the Petitioner. Taking these problems into consideration, counsel did not want to expedite going to trial. Counsel testified that, although, he did not create the delay, he wanted to take advantage of the delay to "poke holes and create avenues," where there would be errors, and if it went to trial, the Petitioner would have several avenues for post-conviction and appeals.
>
> In fact, counsel did believe that there were two main advantages in waiting: (1) dragging so long would push the State to settle or get rid of the case; and (2) all the witnesses were Hispanic, and may not be available at the trial date. After the Petitioner filed a Motion to Dismiss, the State agreed to settle. Before the Motion was filed, no settlement offers were discussed. Counsel also testified that he and the Petitioner discussed the possible advantages thoroughly. Therefore, counsel cannot be viewed as rendering ineffective assistance of counsel on this basis. Petitioner's

---

[3] In his post-conviction hearing, the Petitioner never stated that he would have proceeded to trial had he been allowed to testify. Instead, he asks this Court to infer from the record that his answer, "yes," to the question "[h]ad you known these things I've gone over with you . . . would your decision have been different?" indicates that not testifying changed his decision.

allegation is without merit.

The Sixth Amendment to the United States Constitution provides that "in all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. Const. amend. VI; see State v. Simmons, 54 S.W.3d 755, 758 (Tenn. 2001). Similarly, the Tennessee Constitution provides that "in all criminal prosecutions, the accused hath the right to . . . a speedy public trial." Tenn. Const. Art. I, § 9; see Simmons, 54 S.W.3d at 758; see also Tenn. Code Ann. § 40-14-101 (stating "In all criminal prosecutions, the accused is entitled to a speedy trial . . . ."). The speedy trial guarantee is designed to protect the accused from oppressive pre-trial incarceration, the anxiety and concern due to unresolved criminal charges, and the risk that the accused's defense will be impaired by dimming memories or lost evidence. Simmons, 54 S.W.3d at 758; see Doggett v. United States, 505 U.S. 647, 654 (1992); State v. Utley, 956 S.W.2d 489, 492 (Tenn. 1997). The United States Supreme Court enunciated a four-factor balancing test for courts to apply when evaluating a claim that the accused was denied a speedy trial: "(1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of the right; and (4) the prejudice suffered by the defendant from the delay." Simmons, 54 S.W.3d at 759 (citing Barker v. Wingo, 407 U.S. 514, 530 (1972)).

The Petitioner testified that he signed a 1997 confession implicating himself in the crime, and he pled guilty on July 17, 2002. He said that his co-defendant had earlier implicated him in the crime. Counsel noted that, in his eleven years of practice, he had only suppressed two defendant confessions. He stated that he received conflicting statements from his client as to what happened and that the co-defendant implicated the Petitioner as the shooter. Counsel testified that he believed that the Petitioner would likely be convicted. He said that he did not push for a speedy trial because he believed that, as time passed, more "holes" would open in the State's case, including the departure of key witnesses from the area. Counsel noted that, although this delay strategy was not his initial approach, waiting became the best tactical decision in his view. He believed that the Petitioner would benefit from any "holes" in the State's case resulting from the delay. Furthermore, Counsel said that he informed the Petitioner of this approach. Counsel believed that the delay worked in the Petitioner's interest in providing a better plea bargain. Given the evidence of the case from the attorney's perspective at the time, we conclude, as did the post-conviction court, that a reasonable attorney could have adopted this strategy. We conclude, as the post-conviction court did, that the Petitioner was not denied effective assistance of his counsel in this instance. This issue is without merit.

### III. Conclusion

In accordance with the foregoing authorities and reasoning, we AFFIRM the post-conviction court's judgment in denying post-conviction relief.

_____
ROBERT W. WEDEMEYER, JUDGE