IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs November 2, 2004

## MIKO T. BURL v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Shelby County**
**No. P-27215    Bernie Weinman, Judge**

---

**No. W2004-00327-CCA-R3-PC  - Filed December 23, 2004**

---

The Petitioner, Miko T. Burl, was convicted of aggravated assault, aggravated burglary, and especially aggravated robbery, and the trial court sentenced him to an effective sentence of twenty-five years.  On direct appeal, this Court vacated the Petitioner's aggravated assault conviction, but affirmed all of the Petitioner's other convictions.  The Petitioner subsequently filed a petition for post-conviction relief alleging, among other things, ineffective assistance of counsel.  After a hearing, the post-conviction court dismissed the Petitioner's petition.  On appeal, the Petitioner contends that the post-conviction court erred because the Petitioner's trial counsel was ineffective.  Finding no reversible error, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which JERRY L. SMITH and J.C. MCLIN JJ., joined.

C. Anne Tipton, Memphis, Tennessee, for the appellant, Miko T. Burl.

Paul G. Summers, Attorney General and Reporter; David E. Coenen, Assistant Attorney General; William L. Gibbons, District Attorney General; and Emily Campbell, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION
### I.  Facts

On February 7, 2000, a Shelby County jury convicted the Petitioner of aggravated assault, aggravated burglary, and especially aggravated robbery.  The trial court sentenced the Petitioner, a Range I standard offender, to four years for the aggravated assault conviction, four years for the aggravated burglary conviction, and twenty-five years for the especially aggravated robbery conviction, and ordered these sentences to run concurrently.  This Court summarized the underlying facts of the Petitioner's case on direct appeal as follows:

On September 22, 1998, Josephine Woodson, the eighty-six-year-old victim, and her daughter-in-law, Linda Fly, were at Ms. Woodson's home in Memphis. Ms. Woodson heard someone at the door. Thinking it was her son, she got up to let him in. When she got up, she was met by the Appellant, who was holding a gun in her face and demanding money. Ms. Woodson grabbed the gun, and began to "tussle all over the floor" with the Appellant. The Appellant threw Ms. Woodson against a heater, breaking her ribs. He fled the home after taking $230 from a pocket of Ms. Woodson's clothing. During the robbery, the Appellant dropped a pager. Based upon this fact, the Appellant was developed as a suspect. During the investigation, two photo lineups were shown to Ms. Woodson and Ms. Fly, and both positively identified the Appellant as the robber.

State v. Miko T. Burl, No. W2000-02074-CCA-R3-CD, 2002 WL 1483207, at *1-2 (Tenn. Crim. App., at Jackson, Jan. 28, 2002), *perm. app. denied* (Tenn. June 24, 2002).

On direct appeal, this Court held that the Petitioner's convictions for both aggravated assault and especially aggravated robbery violated double jeopardy principles. Therefore, this Court vacated the Petitioner's conviction for aggravated assault. The Tennessee Supreme Court denied the Petitioner's request for permission to appeal. The Petitioner filed a petition for post-conviction relief alleging, among other things, that he was denied effective assistance of counsel. After a hearing, the post-conviction court dismissed the petition, and the Petitioner filed a timely notice of appeal. On appeal, the Petitioner asserts that the post-conviction court erred when it dismissed his petition based on its finding that there was no merit to the Petitioner's claim that he was denied effective assistance of counsel.

The following evidence was presented at the post-conviction hearing: The Petitioner testified that he was convicted in 2000 on three charges and was serving time for those convictions with the Tennessee Department of Corrections. He said that he was arrested on those charges in 1999 and that he was appointed a public defender in general sessions court for his preliminary hearing. He testified that another public defender, William Moore, was appointed to represent him in Division II. The Petitioner explained that Moore represented him from March until November of 1999. The Petitioner said that, on November 30, 1999, his scheduled trial date, the trial court relieved Moore from representing him and instructed the Petitioner to return to court for his trial on January 24, 2000, with an attorney. The Petitioner said that, prior to November 30, 1999, he began working for a temporary service in an attempt to get the money to hire an attorney. He explained that he did not have enough money to hire an attorney until "a couple of days" before his January 24, 2000, court date. He testified that, a couple of days before January 24, 2000, he spoke to a lawyer, Marvin Ballin, who came with him to court on January 24, 2000. The Petitioner said that, after Ballin came with him to court on the 24th, he refused to represent him and told the Petitioner to come to his office to obtain a refund of his retainer. The Petitioner said that he was taken into custody when he came to court on the 24th, and stayed in custody until 12:30 p.m. that same day. Thereafter, the court released him to find an attorney and told him to be back at court by 1:30 p.m., with an attorney

prepared to represent him.

The Petitioner testified that he contacted Brent Stein ("Counsel") to represent him, and, after he spoke with Counsel for twenty to thirty minutes, Counsel came back to court with the Petitioner at 1:30 p.m. The Petitioner said that he and Counsel did not discuss strategies or potential witnesses on that day. He said that Counsel asked for, and was granted, a continuance, and the trial was set for February 2, 2000. The Petitioner testified that the court held him in contempt and he remained in custody for ten days. He said that Counsel came to visit him once and they spoke about the case for approximately fifteen minutes, when they discussed, among other things, how Counsel could contact the Petitioner's witnesses. Additionally, the Petitioner said that Counsel met with him "right before [he] went to trial."

The Petitioner testified that Counsel never discussed with him any discovery that he had received from the State, any pretrial motions that needed to be filed, or any defenses. The Petitioner said that his meeting with Counsel on the day of trial lasted between ten and fifteen minutes and that they discussed picking a jury and the Petitioner's witnesses. The Petitioner said that Counsel had an assistant with him at this meeting. He testified that, at his trial, he testified on his own behalf, and Counsel never reviewed what his testimony would be with him prior to his testifying. The Petitioner said that Counsel never told him if he investigated the crime scene. The Petitioner said that one of the two eyewitnesses misidentified him at the preliminary hearing, and the other witness said that he looked like the person, but testified that the intruder wore a hat.

The Petitioner said that Counsel filed a motion to suppress the two witnesses' identification of him, and that the trial judge should have granted that motion. The Petitioner testified that Counsel never told him whether he obtained a video tape of the preliminary hearing, and Counsel never talked to the State's witnesses prior to trial. The Petitioner said that Counsel cross-examined the witnesses against him and called his alibi witnesses. He testified that Counsel represented him on appeal and filed a brief on his behalf. He said he filed a complaint with the Bar because Counsel did not visit him to discuss his appeal. Further, he testified that his convictions were affirmed in part and reversed in part, but he was currently incarcerated on the twenty-five year sentence for the especially aggravated robbery conviction. The Petitioner said that Counsel filed a Rule 11 application, but it was denied by the Supreme Court.

On cross-examination, the Petitioner said that he became displeased with his first attorney and so he had him dismissed. He said that he was charged with these crimes on February 25, 1999, and first appeared in court on March 17, 1999. He said that, on his trial date in November of 1999, he told the judge that he wanted to hire another attorney. The Petitioner said that he hired another attorney who did not want to represent him and returned his retainer. The Petitioner testified that he hired Counsel, and Counsel requested a continuance that the trial court granted. The Petitioner conceded that Counsel spoke with him, got his file from his first attorney, and spoke with his alibi witnesses. The Petitioner also conceded that Counsel tried "in earnest" to get the photographic identification suppressed.

Counsel testified that he currently practices criminal law exclusively in Shelby County and had done so since 1963. Counsel testified that he had represented defendants charged with aggravated burglary or especially aggravated robbery in over fifty cases. Counsel testified that he represented the Petitioner, but he could not locate his file on the matter. He said that the Petitioner came into his office and told him that two other attorneys refused to represent him. He said that the Petitioner had a problem with the trial judge, who told him to find an attorney, and the Petitioner started crying when telling Counsel about the situation. Counsel testified that he began representing the Petitioner two weeks prior to the Petitioner's trial. He said that he had full discovery, had received the Petitioner's file from his previous attorney, and he knew what the issues were. Counsel testified that he investigated the alibi witnesses and that he was ready to try the case. Counsel testified that he could not remember whether he listened to the tape from the Petitioner's preliminary hearing. He said that he did not discuss defense strategies with the Petitioner because the Petitioner said that he was not at the scene of the crime, therefore, the defense was one of mistaken identification. Counsel said that he argued mistaken identification to the jury.

Counsel said that he filed a motion to suppress the photographic identification, but it was denied. He said that he argued that issue on appeal, but the Court denied that issue. Counsel said that, even though he called the alibi witnesses, the jury did not believe the Petitioner's alibi witnesses because the jury found the Petitioner guilty. Counsel testified that he believed that he was prepared for the Petitioner's trial.

On cross-examination, Counsel testified that he did not recall how many times he spoke with the Petitioner, but he talked to him an "adequate enough time to understand what his position [was] and how [he] was going to proceed to trial." Counsel said that it was less than two weeks between the time that he took the Petitioner's case and when the case was tried. Counsel stated that he talked to every witness before he called them to testify. Counsel said that he cross-examined the witness who changed her story and that he brought that fact out before the jury. Counsel testified that the Petitioner told him that he was not guilty and that he would not accept any kind of offer. Counsel said that he never visited the crime scene. He said that the Petitioner testified on his own behalf and made a good witness. Counsel testified that, after the trial, he did not discuss the issues for appeal with the Petitioner. Counsel testified that he did not raise the issue that the Court of Criminal Appeals reversed. He also said that he did not hire a private investigator in this case because he was familiar with the facts, the theory, and the witnesses.

The post-conviction court took this evidence and the arguments of counsel under advisement and, in its order denying the Petitioner post-conviction relief, the post-conviction court stated:

> This case presents a somewhat unusual set of circumstances. The [Petitioner] was represented by a member of the public defender's office at his preliminary hearing and another member of the public defender's office was appointed to represent him in the trial court. According to the [P]etitioner's testimony this attorney was appointed in March of 1999. In November of 1999 at the joint request of the [Petitioner] and the public defender the attorney was relieved of his responsibility to

represent the [Petitioner] at trial and the trial court ordered the [Petitioner] to return to court in January 2000 with a private attorney ready to go to trial. The [P]etitioner stated that he was working for a temporary service and was unable to earn enough to pay an attorney a retainer until two days prior to the trial date. He stated that he paid a retainer to one attorney and when that attorney found out that he would have to be ready for trial on such short notice he refunded the [P]etitioner's money and the [P]etitioner located another attorney who did represent him at trial. On the date when the case was set for trial the attorney requested a continuance, the trial judge granted a ten-day continuance and [the Petitioner] was held in contempt of court and placed in custody.

In the interim the trial attorney filed a motion to suppress the photo identification which motion was heard and overruled by the trial court. Unfortunately the trial attorney could not locate his file prior to the hearing on this petition for post-conviction relief.

The Court finds from all the evidence presented at this hearing that the trial attorney was able to obtain and fully review the public defender's file prior to trial. He discussed the case with the [Petitioner] and interviewed the alibi witnesses. He developed a defense of mistaken identification and at trial he put on proof of an alibi, and he cross-examined the State's witnesses concerning their identification.

. . . .

The Court finds that the trial attorney competently cross-examined the State's witnesses concerning their identification of the [Petitioner] and in addition put on all the alibi proof available to him. . . . The Court finds that under the time constraints involved in this case the attorney more than adequately represented his client.

. . . .

By holding the [Petitioner] in contempt obviously the trial court found that the [Petitioner] did not exercise due diligence in obtaining private counsel which caused additional delays in the trial. It would appear that the [Petitioner] was responsible for the short period of time that defense counsel had to prepare for trial.

The Court finds that the advice given and the services rendered by the [Petitioner's] counsel w[ere] within the range of competency demanded by an attorney in a criminal case and that Mr. Stein's representation of the [Petitioner] at his trial complied with the requirements set out by the Supreme Court of Tennessee in Baxter v. Rose, 523 S.W.2d 930.

It is from this order of the post-conviction court that the Petitioner now appeals.

## II. Analysis

On appeal, the Petitioner contends that the post-conviction court erred by not granting him post-conviction relief because his trial counsel was ineffective. Specifically, the Petitioner asserts that Counsel's assistance was ineffective because Counsel failed to establish a relationship with him and because Counsel failed to adequately investigate the Petitioner's case. In order to obtain post-conviction relief, a petitioner must show that his or her conviction or sentence is void or voidable because of the abridgment of a constitutional right. Tenn. Code Ann. § 40-30-103 (2003). The petitioner bears the burden of proving factual allegations in the petition for post-conviction relief by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f). A post-conviction court's factual findings are subject to a de novo review by this Court; however, we must accord these factual findings a presumption of correctness, which is overcome only when a preponderance of the evidence is contrary to the post-conviction court's factual findings. Fields v. State, 40 S .W.3d 450, 456 (Tenn. 2001). A post-conviction court's conclusions of law are subject to a purely de novo review by this Court, with no presumption of correctness. Id. at 457.

The right of a criminally accused to representation is guaranteed by both the Sixth Amendment to the United States Constitution and Article I, section 9, of the Tennessee Constitution. State v. White, 114 S.W.3d 469, 475 (Tenn. 2003); State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999); Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). This right to representation includes the right to "reasonably effective" assistance. Burns, 6 S.W.3d at 461. The Tennessee Supreme Court has held that the issue of ineffective assistance of counsel is a mixed question of law and fact and, as such, is subject to a de novo review. Id.

In reviewing a claim of ineffective assistance of counsel, this Court must determine whether the advice given or services rendered by the attorney are within the range of competence demanded of attorneys in criminal cases. Baxter, 523 S.W.2d at 936. To prevail on a claim of ineffective assistance of counsel, a petitioner must show that "counsel's representation fell below an objective standard of reasonableness," Strickland v. Washington, 466 U.S. 668, 688 (1984), and that this performance prejudiced the defense, resulting in a failure to produce a reliable result. Id. at 687; Cooper v. State, 849 S.W.2d 744, 747 (Tenn. 1993). To satisfy the requirement of prejudice, a petitioner must show a reasonable probability that, but for counsel's unreasonable error, the fact finder would have had reasonable doubt regarding the petitioner's guilt. Strickland, 466 U.S. at 695. This reasonable probability must be "sufficient to undermine confidence in the outcome." Id. at 694; see also Harris v. State, 875 S.W.2d 662, 665 (Tenn. 1994). In cases involving a guilty plea or a plea of nolo contendere, the petitioner must show prejudice by demonstrating that, but for counsel's errors, he would not have pleaded guilty but would have insisted upon going to trial. See Hill v. Lockhart, 474 U.S. 52, 59 (1985); Bankston v. State, 815 S.W.2d 213, 215 (Tenn. Crim. App. 1991).

When evaluating an ineffective assistance of counsel claim, the reviewing court should judge the attorney's performance within the context of the case as a whole, taking into account all relevant circumstances. Strickland, 466 U.S. at 690; State v. Mitchell, 753 S.W.2d 148, 149 (Tenn. Crim. App. 1988). The reviewing court must evaluate the questionable conduct from the attorney's

perspective at the time. Strickland, 466 U.S. at 690; Cooper, 849 S.W.2d at 746; Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982). In doing so, the reviewing court must be highly deferential and "should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Burns, 6 S.W.3d at 462. Counsel should not be deemed to have been ineffective merely because a different procedure or strategy might have produced a different result. Williams v. State, 599 S.W.2d 276, 279-80 (Tenn. Crim. App. 1980). The fact that a particular strategy or tactic failed or hurt the defense does not, standing alone, establish unreasonable representation. House v. State, 44 S.W.3d 508, 515 (Tenn. 2001) (citation omitted); Thomas Brandon Booker v. State, No. W2003-00961-CCA-R3-PC, 2004 WL 587644, at *4 (Tenn. Crim. App., at Jackson, Mar. 24, 2004), *no perm. app. filed*. However, deference to matters of strategy and tactical choices applies only if the choices are informed ones based upon adequate preparation. House, 44 S.W.3d at 515.

After throughly reviewing the record, we conclude that the Petitioner was not denied effective assistance of counsel. The Petitioner testified that he was found indigent and the trial court appointed an attorney to represent him. The Petitioner waited until the day of his trial to inform the trial court that he was dissatisfied with his attorney and that he wished to hire another attorney. The trial court gave the Petitioner two months to find another attorney. The Petitioner waited again until the day of his trial to find another attorney, Counsel, who agreed to represent him. Counsel asked for, and was granted, a continuance to prepare for trial, but the Petitioner was found in contempt of court for not having his attorney prepared for trial on the trial date. Despite the short one-week time period that Counsel had to prepare for trial, Counsel filed a motion to suppress a photographic lineup, met with the Petitioner, the Petitioner's witnesses, and prepared for trial. The Petitioner's defense was one of mistaken identification, and he provided alibi witnesses who testified. The Petitioner also testified on his own behalf. The fact that the jury accredited the testimony of the State's witnesses, over the testimony of the Petitioner, does not prove that Counsel was ineffective. Counsel testified that he was fully prepared to defend the Petitioner at trial, and he defended the Petitioner to the best of his ability. We conclude, as did the post-conviction court, that the Petitioner has failed to prove by clear and convincing evidence that Counsel's representation fell below an objective standard of reasonableness.

### III. Conclusion

In accordance with the foregoing reasoning and authorities, we affirm the post-conviction court's judgment dismissing the Petitioner's petition for post-conviction relief.

_____
ROBERT W. WEDEMEYER, JUDGE