IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs December 7, 2004

## WILLIAM DAVID FARRAR v. STATE OF TENNESSEE

**Direct Appeal from the Circuit Court for Bedford County
Case No. 9377-PC     Lee Russell, Judge**

---

**No. M2003-01888-CCA-R3-PC - Filed January 24, 2005**

---

The Petitioner, William David Farrar, pled guilty to one count of burglary, and the trial court sentenced him to five years in prison, to be served consecutively to another sentence in Marshall County. The Petitioner did not perfect a direct appeal, but later filed a pro se petition for post-conviction relief, which was amended by appointed counsel. After a hearing, the post-conviction court dismissed the petition, and the Petitioner now appeals, contending that the post-conviction court erred because his trial counsel was ineffective. Finding no reversible error, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which DAVID H. WELLES and THOMAS T. WOODALL, JJ., joined.

Hayley E. Fults (on appeal) and Richard A. Cawley (at trial), Shelbyville, Tennessee, for the Appellant, William David Farrar.

Paul G. Summers, Attorney General and Reporter; Helena Walton Yarbrough, Assistant Attorney General; William Michael McCowy, District Attorney General; and Michael D. Randles, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**
**I. Facts**

The Petitioner filed a pro se petition for post-conviction relief, which was later amended by appointed counsel. In his petition he alleged, in part, that he received ineffective assistance of counsel. The following evidence was presented at the hearing on the Petitioner's petition for post-conviction relief: Andy Myrick ("Counsel") testified that he was appointed to represent the Petitioner on charges of burglary and theft in Bedford County, which are the subject of this appeal, and he also represented the Petitioner on similar charges in Marshall County. Counsel said that he filed a motion for discovery and that he received a proposed witness list from the prosecution, along with

statements made by the Petitioner, his co-defendant, and a third-party witness to the Marshall County crimes. Counsel said that there were no witnesses to the crimes that occurred in Bedford County, so the Petitioner was the only person that he interviewed about these charges. Counsel testified that he read the statements of both the Petitioner and the Petitioner's co-defendant. He said that the only other witnesses were police officers, who "in [his] experience . . . are not too willing to talk to [him] when [he is] representing . . . someone they are prosecuting."

Counsel testified that Beth Freeman also made a written statement to police about the Marshall County crimes. In that statement, Beth Freeman said that the Petitioner and his co-defendant were at her house on the night that the crimes occurred, and they left at 9:00 p.m. and did not return until early the next morning. Freeman said that, when the Petitioner and his co-defendant returned, they had bags of candy and jewelry and money, all of which was taken from a church in Marshall County or a church in Bedford County. Counsel said that the Petitioner and his co-defendant were temporarily staying with Freeman when the police executed a search warrant of Beth Freeman's house and found some of the stolen items in her home.

Counsel testified that, in his first few meetings with the Petitioner, the Petitioner never denied his involvement with the crimes that occurred in Marshall County and in Bedford County. Further, the Petitioner gave a statement to police in which he admitted his involvement in the crimes. Similarly, the Petitioner's co-defendant gave a statement to police about his involvement in the crimes. Counsel said that, subsequently, the Petitioner's story changed, and the Petitioner said that his confession was coerced because the police told him that, if he did not make the statement, the State would take Beth Freeman's children away from her. In response, Counsel testified that he filed a motion to suppress the Petitioner's statement to police, and he requested a trial date. He said that there was never a hearing on the motion to suppress because the case was settled sometime before the trial was set.

Counsel said that he visited with the Petitioner seven times, and some of those visits occurred in court and some were in jail. Counsel said that he gave the Petitioner a file similar to his own file and sent the Petitioner copies of everything that he received. He said that, at some point, the Petitioner wanted a jury trial, but Counsel advised the Petitioner that he thought a jury trial would be unsuccessful because of the Petitioner's statement, the Petitioner's co-defendant's statement, and the fact that some of the stolen goods were found in the home where the Petitioner was staying.

Counsel said that, during the plea negotiations, there was an issue about whether the Petitioner's sentence for his crimes in Bedford County should run consecutively to or concurrently with his sentence for crimes he committed in Marshall County. Counsel recalled that the Petitioner was to receive ten years for his Marshall County crimes and that sentence was to run consecutively to any sentence that he received in Bedford County. Counsel said that he explained to the Petitioner that the sentences would run consecutively before the Petitioner entered his guilty plea in Marshall County. Counsel said that he did not recall whether the Petitioner was taking any medications when he represented the Petitioner.

On cross-examination, Counsel reiterated that the majority of the stolen property was found in the house where the Petitioner and his co-defendant were staying shortly after the burglaries, and both the Petitioner and his co-defendant gave statements to police implicating themselves. Further, Beth Freeman gave a written statement to police implicating the Petitioner and his co-defendant. Counsel again said that the Petitioner admitted to him that he was involved in these crimes.

Counsel testified that he has handled a fair number of criminal cases. He said that he wanted to get the Petitioner the best "deal" possible, until he learned the Petitioner wanted a trial, then he wanted the Petitioner to get a trial. Counsel said that he never believed that the Petitioner was innocent of the charges against him. Counsel said that he discussed both cases with the Petitioner on several occasions: December 9, 2001, for six hours; January 2, 2002, for half an hour; January 9, 2002, for half an hour; February 19, 2002, for eight hours; and March 25, 2002, for four hours. Counsel reiterated that the Petitioner has a complete copy of Counsel's file for these cases. Counsel said that he discussed the Petitioner's right to a jury trial with him, and he said that they actually set the case for a trial. He testified that the Petitioner knew "if he wanted to [he could] have a jury decide his guilt or innocence, no matter what strength or weakness" of his case was.

Counsel testified that the Petitioner pled guilty to the charges against him in Bedford County. He said that, in both counts, the Petitioner received a sentence of five years, to be served at thirty-five percent. Counsel said that he either read the plea agreement to the Petitioner or he allowed the Petitioner to read the document, but he was sure that the Petitioner was aware of everything in that document. Counsel said that the Petitioner understood the terms of his Bedford County sentence, and the Petitioner understood that this sentence would run consecutively to his sentence in Marshall County. Counsel testified that it was the Petitioner's decision not to go to trial, and Counsel has never forced anyone to accept a plea deal.

On redirect examination, Counsel said that he knew that the Petitioner was only staying at Beth Freeman's house temporarily when the search warrant was executed. He said that he did not know where the Petitioner's permanent address was at the time.

The Petitioner testified that Counsel visited him twice in jail, and most of the time when they met it was in the courthouse. He said that he understood that he would be charged in Bedford County after he served his time in Marshall County. The Petitioner said that he believed that he was to serve seven years in Marshall County, consecutively to "[his] other three" for a total of ten years. The Petitioner said that he first told Counsel that he had committed these crimes because "of Beth Freeman, her situation," and then he recanted this statement and told him that he did not commit these crimes and wanted to go to trial. The Petitioner said that Counsel told him that it would be in his best interest not to go to trial because of the weight of the evidence against him and because there was a possibility that, if found guilty, he could receive the maximum sentence.

The Petitioner testified that he recanted his story because he did not commit these crimes. He said that, at the time of his arrest, he was not living in Marshall County, where he was arrested, but was living in Bedford County. He explained that his co-defendant came to pick him up earlier

in the evening of his arrest. He said that he only confessed to these crimes because the police threatened to take Beth Freeman's child from her if he did not confess. The Petitioner testified that he discussed the motion to suppress with Counsel, and it was his understanding that Counsel would file this motion; but more than likely the motion would not be granted, and he understood that his statement would be used against him if they went to trial.

The Petitioner testified that, when he signed the plea agreement in Bedford County, he believed that he would be serving five years at thirty-five percent, concurrent with his Marshall County sentence. After he signed the agreement, he learned that his sentence would run consecutive to his Marshall County sentence. The Petitioner said that, sometime before he went to the judge, he told Counsel that he had changed his mind and did not want to enter a plea. He said that he "wadded up" the first plea agreement and threw it in the trash, causing an argument between himself and Counsel. The Petitioner testified that, after he signed the plea agreement, but before it was entered in court, he changed his mind, but Counsel told him that once he had signed the plea agreement he could not "go back on it."

The Petitioner testified that, when he was entering his plea, the trial judge asked him if he was taking any medications, and he responded negatively. He said that officials in Marshall County had taken him off of his medication, which he needed for depression, asthma, and muscle relaxation. The Petitioner said that being off of his medication "could have" affected his ability to make a decision about his case. The Petitioner testified that he has difficulty reading because he has an eye disease called Keratoconus. He said that, as a result, his vision is blurry and he sees spots, "double-black spots." The Petitioner admitted that he could read the plea agreement, but said that it was "still kind of blurry to an extent." The Petitioner said that he did not have any questions for Counsel when he read the agreement because he thought that his sentence was going to run concurrently with his Marshall County sentence. The Petitioner explained that, when the judge explained that his sentence would run consecutively to the Marshall County sentence, he did not say anything because he did not know that he could. The Petitioner testified that he got the information that he put in his statement to police from his co-defendant and from Beth Freeman when they were all in jail together prior to being interviewed.

On cross-examination, the Petitioner explained that, when the police were searching Beth Freeman's trailer, they said "Hey you need to admit or we are going to take her child." He said that the police handcuffed him and his co-defendant and called Beth Freeman back into the house. Then they told him that he needed to admit what he had done so that she would not get her child taken. The Petitioner said that the police "supposedly" knew what he had done because a "snitch" told them. He said that he admitted to this crime because his child has been taken from him. When asked whether the Petitioner knew, at the time he entered his plea agreement, whether his sentence would run consecutively to his Marshall County sentence, the Petitioner responded "I don't know. Did I?" The Petitioner then admitted that, at the time he entered his plea, he knew that his sentences would run consecutively. The Petitioner admitted that, when the trial court asked him if he had any questions, he responded "no." The Petitioner said that he told the judge that he understood everything in the plea agreement. He said that Counsel told him "once [you] . . . sign the agreement,

that was it. That was the agreement. . . . [He] did not know that he could ask [the judge] anything." The Petitioner admitted that he has pled guilty to felony crimes on four previous occasions.

Counsel testified again, and he denied the Petitioner's allegation that he told the Petitioner that there was "no turning back" after the Petitioner signed the plea agreement.

Based upon this evidence, the post-conviction court dismissed the Petitioner's petition for post-conviction relief.

## II. Analysis

On appeal the Petitioner contends that the post-conviction court erred when it dismissed his petition because Counsel was ineffective by: (1) failing to pursue a motion to suppress; and (2) failing to advise the Petitioner of matters essential to his plea of guilty. In the post-conviction court's oral findings of fact, it found that the Petitioner was not an "entirely credible" witness. Further, with regard to the two arguments the Petitioner presents on appeal, the post-conviction court found:

> [C]ounsel informed the Defendant/Petitioner of his right to a jury trial, that the undersigned judge so informed the Defendant/Petitioner at the plea acceptance hearing . . . and that the case was at one time actually set for a jury trial, which the Defendant/Petitioner knew;

> . . . [T]he Defendant/Petitioner admitted at the evidentiary hearing on this Petition that he knew the range of punishment before his plea; that the range was listed on the Petition to Enter a Plea of Guilty and was read to the Defendant/Petitioner at the plea acceptance hearing; and that the fact that the relevant sentences were to be consecutive to one another was mentioned in the Petition to Enter a Plea of Guilty and was discussed with the Defendant/Petitioner by [C]ounsel privately before the plea was entered[;]

> . . . [A] motion to suppress was filed but not argued, but there was no showing at the evidentiary hearing that the statements would have been suppressed, and the fact that the Defendant/Petitioner recanted his confession later would not be grounds by itself for suppressing the statements in question.

In order to obtain post-conviction relief, a petitioner must show that his or her conviction or sentence is void or voidable because of the abridgment of a constitutional right. Tenn. Code Ann. § 40-30-103 (2003). The petitioner bears the burden of proving factual allegations in the petition for post-conviction relief by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f). A post-conviction court's factual findings are subject to a de novo review by this Court; however, we must accord these factual findings a presumption of correctness, which is overcome only when a preponderance of the evidence is contrary to the post-conviction court's factual findings. Fields v.

State, 40 S .W.3d 450, 456 (Tenn. 2001). A post-conviction court's conclusions of law are subject to a purely de novo review by this Court, with no presumption of correctness. Id. at 457.

The right of a criminally accused to representation is guaranteed by both the Sixth Amendment to the United States Constitution and Article I, section 9, of the Tennessee Constitution. State v. White, 114 S.W.3d 469, 475 (Tenn. 2003); State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999); Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). This right to representation includes the right to "reasonably effective" assistance. Burns, 6 S.W.3d at 461. The Tennessee Supreme Court has held that the issue of ineffective assistance of counsel is a mixed question of law and fact and, as such, is subject to a de novo review. Id.

In reviewing a claim of ineffective assistance of counsel, this Court must determine whether the advice given or services rendered by the attorney are within the range of competence demanded of attorneys in criminal cases. Baxter, 523 S.W.2d at 936. To prevail on a claim of ineffective assistance of counsel, a petitioner must show that "counsel's representation fell below an objective standard of reasonableness," Strickland v. Washington, 466 U.S. 668, 688 (1984), and that this performance prejudiced the defense, resulting in a failure to produce a reliable result. Id. at 687; Cooper v. State, 849 S.W.2d 744, 747 (Tenn. 1993). To satisfy the requirement of prejudice, a petitioner must show a reasonable probability that, but for counsel's unreasonable error, the fact finder would have had reasonable doubt regarding the petitioner's guilt. Strickland, 466 U.S. at 695. This reasonable probability must be "sufficient to undermine confidence in the outcome." Id. at 694; see also Harris v. State, 875 S.W.2d 662, 665 (Tenn. 1994). In cases involving a guilty plea or a plea of nolo contendere, the petitioner must show prejudice by demonstrating that, but for counsel's errors, he would not have pleaded guilty but would have insisted upon going to trial. See Hill v. Lockhart, 474 U.S. 52, 59 (1985); Bankston v. State, 815 S.W.2d 213, 215 (Tenn. Crim. App. 1991).

When evaluating an ineffective assistance of counsel claim, the reviewing court should judge the attorney's performance within the context of the case as a whole, taking into account all relevant circumstances. Strickland, 466 U.S. at 690; State v. Mitchell, 753 S.W.2d 148, 149 (Tenn. Crim. App. 1988). The reviewing court must evaluate the questionable conduct from the attorney's perspective at the time. Strickland, 466 U.S. at 690; Cooper, 849 S.W.2d at 746; Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982). In doing so, the reviewing court must be highly deferential and "should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Burns, 6 S.W.3d at 462. Counsel should not be deemed to have been ineffective merely because a different procedure or strategy might have produced a different result. Williams v. State, 599 S.W.2d 276, 279-80 (Tenn. Crim. App. 1980). The fact that a particular strategy or tactic failed or hurt the defense does not, standing alone, establish unreasonable representation. House v. State, 44 S.W.3d 508, 515 (Tenn. 2001) (citation omitted); Thomas Brandon Booker v. State, No. W2003-00961-CCA-R3-PC, 2004 WL 587644, at *4 (Tenn. Crim. App., at Jackson, Mar. 24, 2004), *no perm. app. filed*. However, deference to matters of strategy and tactical choices applies only if the choices are informed ones based upon adequate preparation. House, 44 S.W.3d at 515.

In the case under submission, we conclude that the Petitioner was not denied effective assistance of counsel by Counsel's "failure to pursue" the Petitioner's motion to suppress. First, we conclude that the Petitioner has not proven that Counsel's representation fell below an objective standard of reasonableness. The Petitioner made a statement to police implicating himself in the crimes for which he was charged, and he told Counsel that he was guilty of these crimes. Later, he told Counsel that he only confessed to these crimes because the police threatened to take Beth Freeman's child from her. In response, Counsel filed a motion to suppress the Petitioner's statement, and Counsel requested, and was granted, a trial date. Prior to a hearing being held on the motion to suppress, the Petitioner reached an agreement with the State to plead guilty, and Counsel, therefore, did not pursue the motion to suppress. We fail to see how this representation was inadequate. Further, even were we to conclude otherwise, the Petitioner has clearly failed to prove prejudice. The Petitioner has presented no evidence that, had the motion to suppress been pursued, he would not have pleaded guilty but would have insisted upon going to trial. Accordingly, this issue is without merit.

Similarly, we conclude that Counsel was not ineffective when he advised the Petitioner with respect to his guilty plea. The Petitioner admits that he knew that, according to the plea agreement, he would be receiving a sentence of five years, to be served at thirty-five percent. He also admitted that, at the time that he entered the plea, he was aware that his sentence would run consecutively to his Marshall County sentence. He asserts that, after signing the plea, but before it was entered by the trial court, he told Counsel that he did not want to accept the plea, and Counsel told him it was too late to change his mind because he already signed the plea agreement. The Petitioner admitted that he read the plea agreement, reviewed it with his attorney, and understood its terms. Counsel testified that the Petitioner was aware of the sentence and aware that it would run consecutively to his Marshall County sentence. Counsel also testified that, had the Petitioner said he did not want to plead guilty, Counsel would have gone to trial. Further, the Petitioner admitted that the trial court asked him, when he was entering his plea, whether he had any questions about his sentence or about the fact that the sentence would run consecutively to the Marshall County sentence. The Petitioner's bare assertion that Counsel did not advise him that he could ask questions when the trial court asked him if he had any questions is insufficient to prove that Counsel's representation fell below an objective standard of reasonableness. Further, the Petitioner has failed to prove how Counsel's representation prejudiced him. This issue is without merit.

### III. Conclusion

In accordance with the foregoing reasoning and authorities, we affirm the post-conviction court's judgment dismissing the Petitioner's petition for post-conviction relief.

_____
ROBERT W. WEDEMEYER, JUDGE