# IN THE SUPREME COURT OF TENNESSEE
## AT JACKSON
### April 9, 2003 Session

## STATE OF TENNESSEE v. JEREMY WHITE

**An Appeal by Permission from the Court of Criminal Appeals**
**Criminal Court for Shelby County**
**Nos. 00-04744-45 and 00-04746-47      Arthur T. Bennett, Judge**

---

### No. W2001-02580-SC-R11-CD - Filed September 8, 2003

---

We granted review to determine whether the Court of Criminal Appeals erred in concluding that defense counsel's dual roles as part-time assistant district attorney and defense counsel in this case created a conflict of interest requiring removal of counsel. The trial court found that defense counsel must be disqualified under the facts of this case because a "perceived" conflict of interest existed that could not be waived by the defendant. The Court of Criminal Appeals affirmed on the ground that an actual conflict of interest existed. After reviewing the record, we conclude that counsel's dual roles as prosecutor and defense counsel created an actual conflict of interest that required disqualification. Accordingly, the judgment of the Court of Criminal Appeals is affirmed.

**Tenn. R. App. P. 11  Appeal by Permission; Judgment of the Court of Criminal Appeals Affirmed**

E. RILEY ANDERSON, J., delivered the opinion of the court, in which FRANK F. DROWOTA, III, C.J., and ADOLPHO A. BIRCH, JR., JANICE M. HOLDER, and WILLIAM M. BARKER, JJ., joined.

Mark S. McDaniel, Jef Feibelman, and Susan M. Clark, Memphis, Tennessee, for the appellant, Jeremy White.

Paul G. Summers, Attorney General and Reporter; Michael E. Moore, Solicitor General; John H. Bledsoe, Assistant Attorney General; William L. Gibbons, District Attorney General; and Lee Coffee and Alanda Dwyer, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

### BACKGROUND

Jeremy White was indicted by the Shelby County Grand Jury on May 2, 2000, for the offenses of attempt to commit first degree murder, especially aggravated robbery, especially

aggravated burglary, and especially aggravated kidnapping arising out of events that occurred on October 29, 1999, in Shelby County, Tennessee. He retained Mark S. McDaniel as his defense counsel. McDaniel represented White at his preliminary hearing in the General Sessions Court of Shelby County and his arraignment in the Criminal Court of Shelby County. Thereafter McDaniel conducted discovery, requested a trial date from the Criminal Court of Shelby County, and prepared White's defense.

Prior to trial and during the time McDaniel was serving as White's defense counsel, McDaniel was also serving as a part-time prosecutor for the Town of Collierville in Shelby County, Tennessee. He had been appointed by the Town of Collierville to prosecute municipal law violations occurring in Collierville and heard in the Collierville Municipal Court. The Collierville Municipal Court was also vested with concurrent jurisdiction and authority with Courts of General Sessions in all cases involving the violations of criminal laws of Tennessee within the limits of the municipality. In addition, the District Attorney of Shelby County had appointed McDaniel to serve as an assistant district attorney for Shelby County, and he had been sworn in by a Shelby County Criminal Court judge. The appointment was for the purpose of conveying authority upon McDaniel to prosecute state criminal law violations, in addition to municipal law violations, before the Collierville Municipal Court.

On July 9, 2001, the Board of Professional Responsibility for the State of Tennessee, (hereinafter "Board"), responding to a request from the Shelby County District Attorney's office, issued an unpublished advisory opinion addressing the question of whether it is ethically appropriate for a part-time Assistant District Attorney to prosecute and to represent criminal defendants within the same judicial district. See Advisory Ethics Opinion No. 2001-A-742. The Board, citing provisions of the Tennessee Code of Professional Responsibility and the ABA's Canons of Professional Ethics, concluded that such representation was unethical because the prosecutor's duties to the public and the criminal defense lawyer's duties to the accused are inherently antagonistic and cannot be waived by the public.[1]

Based on the Board's opinion, the State filed a motion in the Criminal Court for Shelby County to disqualify McDaniel from representing Jeremy White. An evidentiary hearing was conducted by the trial court in which the following facts were developed:

---

[1] The Board reiterated the position in its Advisory Opinion in Formal Ethics Opinion 2002-F-107(b) and Formal Ethics Opinion 2002-F-146. The Board based its decisions in part on relevant Disciplinary Rules and Ethical Considerations found in the Code of Professional Responsibility pursuant to Rule 8 of the Tennessee Supreme Court Rules. McDaniel and other part-time assistant district attorneys general have filed a petition in this Court asking us to set aside these Formal Ethics Opinions. See Mark McDaniel, Joe Lee Wyatt, M.C. Jermann and Christopher Nearn v. Board of Professional Responsibility of the Supreme Court of Tennessee, No. M2002-00916-SC-OT-CV. Although the Code of Professional Conduct recently has been superseded by the Tennessee Rules of Professional Conduct, the rules became effective on March 1, 2003, and are to be applied prospectively only. Accordingly, our decision today is primarily based on provisions of the Code of Professional Responsibility applicable to this case.

In July of 1992, Mark S. McDaniel, was employed by the Town of Collierville, in Shelby County, Tennessee, to serve as a part-time prosecutor. This position authorized McDaniel to prosecute city ordinance violations. In 1996, McDaniel was sworn in as an assistant district attorney general to the District Attorney General for Shelby County. See Tenn. Code Ann. § 8-7-103(1) (1993 & Supp. 2002). This additional appointment granted him the authority to prosecute state criminal law violations, *i.e.*, misdemeanor and felony charges.

During the evidentiary hearing, McDaniel conceded that while prosecuting cases in the Collierville Municipal Court on behalf of both the State of Tennessee and the Town of Collierville, he had engaged in a private law practice, which included the defense of individuals charged with committing criminal offenses in the Shelby County General Sessions and Criminal Courts. McDaniel asserted that his appointment as an assistant district attorney was done for the limited purpose of authorizing him to prosecute only state law violations before the Collierville Municipal Court and to "protect and insure him against any type of liability." McDaniel further stated that in this capacity, his prosecutions had only once involved a member of the Shelby County Sheriff's Department.

McDaniel disputed the binding authority of the Board's advisory opinion, No. 2001-A-742, and argued that he was sufficiently independent of the office of the District Attorney General for Shelby County so as to defend White in Shelby County courts without any actual or perceived conflict of interest. Specifically, he contended that his title as assistant district attorney general was a mere formality necessary for liability purposes, that he only prosecuted in his capacity as assistant district attorney general in the Town of Collierville, and that he rarely encountered officers from the Shelby County Sheriff's Department in those prosecutions. White testified in the hearing that he was aware of McDaniel's position as a part-time assistant district attorney general, and he agreed to waive any actual or perceived conflicts of interest.

The State contended that there was an actual conflict of interest that White could not waive in that Shelby County deputy sheriffs, who had county-wide jurisdiction and often testified in State prosecutions in Collierville, might also testify in White's case. The State argued that a public prosecutor's client is the State, that the State is the adverse party here, and that a prosecutor cannot "serve two masters" by representing both the State and the defendant.

The trial court concluded that McDaniel's position as a part-time assistant prosecutor for the Shelby County District Attorney's office, while simultaneously defending White against the State's prosecution in a Shelby County criminal court, created, at a minimum, a "perceived" conflict of interest.[2] The court found that there was a close relationship between the Collierville prosecutor's office and the Shelby County Sheriff's office, and that the community most likely perceived the

---

[2] The trial court's analysis followed State v. Jones, 726 S.W.2d 515, 520 (Tenn. 1987), in which we considered whether county attorneys and their partners may ethically represent defendants being prosecuted by county officials and analyzed the following factors: (1) the lawyer-client relationship between the county attorney and the sheriff; (2) the perception of the community of that relationship; and (3) whether the criminal defendant is being prosecuted by county officers.

prosecutor to be a representative of the Shelby County District Attorney's office. The court also found that the Shelby County District Attorney was prosecuting White and that, together, these factors created a "perceived" conflict of interest:

> Here, the [appellant] is charged with a crime, committed in Shelby County, likely investigated by Shelby County Sheriff's Deputies and prosecuted by the Shelby County District Attorney's office. Moreover, his counsel of record is an employee of the division of government which seeks to prosecute and punish him for his alleged criminal actions.
>
> Therefore, this court finds that, even if the above facts do not give rise to an actual conflict of interest, the State has met its burden of proving that a perceived conflict of interest exists.

The trial court further concluded that this perceived conflict of interest could not be waived by White without the State's consent, and that the State was not required to provide such consent. Finally, the court discounted White's claim that he would be prejudiced if forced to retain new counsel, and instead determined that White's right to "fair and impartial representation" would actually be fostered by McDaniel's removal.

White filed a timely motion for interlocutory appeal pursuant to Rule 9 of the Tennessee Rules of Appellate Procedure, which was granted by the trial court and the Court of Criminal Appeals. The Court of Criminal Appeals affirmed the judgment of the trial court but held that the conflict in this case was more than just "perceived." Relying on Tennessee Supreme Court Rule 8, Formal Ethics Opinion 2002-F-146, and case law from other jurisdictions,[3] the Court of Criminal Appeals held that an "actual" conflict of interest existed because McDaniel could not fulfill the ethical requirements owed by a prosecutor to the public while simultaneously satisfying the ethical requirements owed by a zealous advocate to his client. The Court of Criminal Appeals further held that the trial court did not abuse its discretion in refusing to allow White to waive the conflict.

We granted the appellant's application for permission to appeal.

## ANALYSIS

White argues that he has a right to the counsel of his own choosing and that this right may only be abridged where the State carries its burden of proving that an actual conflict of interest exists. He argues that this Court's decision in State v. Jones, 726 S.W.2d 515 (Tenn. 1987),

---

[3] See People v. Rhodes, 524 P.2d 363, 367 (Cal. 1974); cf. Goodson v. Peyton, 351 F.2d 905, 908-09 (4th Cir. 1965); In re Cole, 738 N.E.2d 1035, 1037 (Ind. 2000); State v. Brown, 853 P.2d 851, 857-59 (Utah 1992); Lanza v. Rath, 568 N.Y.S.2d 278, 280 (N.Y. Sup. Ct. 1991).

precludes any conclusion that counsel's dual roles as prosecutor and defense counsel created an actual conflict of interest in this case and that disqualification was improper. Furthermore, he contends that the removal of counsel would be prejudicial because it would force the appellant to retain new counsel unfamiliar with his family and his case.

The State responds that it did not have the burden of proof to establish that McDaniel's dual status as defense counsel and assistant district attorney general created an actual conflict of interest. Moreover, the State maintains that the trial court's finding of a conflict of interest, whether characterized as actual or perceived, constituted a valid basis from which the trial court could conclude that disqualification was necessary.

## Standard of Review

A trial court's ruling on attorney disqualification will be reversed only upon a showing of an abuse of discretion. Clinard v. Blackwood, 46 S.W.3d 177, 182 (Tenn. 2001); State v. Culbreath, 30 S.W.3d 309, 312-13 (Tenn. 2000). A trial court abuses its discretion whenever it "applie[s] an incorrect legal standard, or reache[s] a decision which is against logic or reasoning that cause[s] an injustice to the party complaining." State v. Shirley, 6 S.W.3d 243, 247 (Tenn. 1999).

## Right to Counsel

We begin our review by recognizing that the Sixth Amendment to the United States Constitution and article I, section 9 of the Tennessee Constitution guarantee a defendant in a state criminal prosecution the assistance of counsel. See Gideon v. Wainwright, 372 U.S. 335, 342 (1963); State v. Northington, 667 S.W.2d 57, 60 (Tenn. 1984). The United States Supreme Court has further observed, however, that "while the right to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment, the essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." Wheat v. United States, 486 U.S. 153, 159 (1988); see also State v. Huskey, 82 S.W.3d 297, 305 (Tenn. Crim. App. 2002). Thus, under both the Sixth Amendment and article I, section 9, the right to the counsel of one's choosing "must be balanced against the requirements of the fair and proper administration of justice." Huskey, 82 S.W.3d at 305 (quoting United States v. Micke, 859 F.2d 473, 480 (7th Cir. 1988)).

The existence of a conflict of interest is a vital consideration to this balance. Indeed, the United States Supreme Court and this Court have held that a trial court may disqualify or remove a defendant's counsel of choice where there exists an actual conflict of interest or a serious potential for conflict. See Wheat, 486 U.S. at 164 ("The District Court must recognize a presumption in favor of petitioner's counsel of choice, but that presumption may be overcome not only by a demonstration

of actual conflict but by a showing of a serious potential for conflict."); [4] State v. Thompson, 768 S.W.2d 239, 245 (Tenn. 1989). In short, "courts have an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." Wheat, 486 U.S. at 160. Moreover, where a trial court finds an actual conflict of interest, it may disqualify the offending attorney notwithstanding a defendant's waiver:

> [W]hen a trial court finds an actual conflict of interest which impairs the ability of a criminal defendant's chosen counsel to conform with the ABA Code of Professional Responsibility, the court should not be required to tolerate an inadequate representation of a defendant. Such representation not only constitutes a breach of professional ethics and invites disrespect for the integrity of the court, but it is also detrimental to the independent interest of the trial judge to be free from future attacks over the adequacy of the waiver or the fairness of the proceedings in his own court and the subtle problems implicating the defendant's comprehension of the waiver.

Wheat, 486 U.S. at 162 (quoting United States v. Dolan, 570 F.2d 1177, 1184 (3d Cir. 1978)).

### Conflict of Interest

In determining whether to disqualify an attorney in a criminal case, the trial court must first determine whether the party questioning the propriety of the representation met its burden of showing that there is an actual conflict of interest. Clinard, 46 S.W.3d at 187; Culbreath, 30 S.W.3d at 312-13; Jones, 726 S.W.2d at 520-21. In the case before us, therefore, the State had the burden of showing by a preponderance of the evidence that McDaniel's representation of both the State and White created an actual conflict of interest.

This Court has clarified that an actual conflict of interest includes any circumstances in which an attorney cannot exercise his or her independent professional judgment free of "compromising interests and loyalties." See Culbreath, 30 S.W.3d at 312-13; see also Tenn. R. Sup. Ct. 8, EC 5-1. In the context of multiple employment, for example, an actual conflict arises where an attorney's continuance of such employment "would be likely to involve the lawyer in representing differing interests." Tenn. Sup. Ct. R. 8, DR 5-105(B). If a conflict exists, it may only be cured if "it is obvious that the lawyer can adequately represent the interest of each [client] and if each [client] consents to the representation after full disclosure of the possible effect of such representation on the exercise of the lawyer's independent professional judgment on behalf of each." Tenn. Sup. Ct. R.

---

[4] Moreover, the Supreme Court emphasized that the "[trial] court must be allowed substantial latitude in refusing waivers of conflicts of interest not only in those rare cases where an actual conflict may be demonstrated before trial, but in the more common cases where a potential for conflict exists which may or may not burgeon into an actual conflict as the trial progresses." Id. at 163.

8, DR 5-105(C). An appearance of impropriety, on the other hand, existed under the Tennessee Code of Professional Conduct "in those situations in which an ordinary knowledgeable citizen acquainted with the facts would conclude that the . . . representation poses substantial risk of disservice to either the public interest or the interest of one of the clients." Clinard, 46 S.W.3d at 187.

In applying these standards to this case, we must first examine the ethical duties and loyalties of the prosecutor and defense counsel. As we stated in Culbreath, prosecutors hold a unique office in our criminal justice system, and therefore must shoulder unique expectations:

> [P]ublic . . . prosecutors are expected to be impartial in the sense that they must seek the truth and not merely obtain convictions. They are also to be impartial in the sense that charging decisions should be based upon the evidence, without discrimination or bias for or against any groups or individuals. Yet, at the same time, they are expected to prosecute criminal offenses with zeal and vigor within the bounds of the law and professional conduct.

Culbreath, 30 S.W.3d at 314. The United States Supreme Court has also addressed the unique duties of a prosecutor:

> [The prosecutor] is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigor–indeed he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones.

Berger v. United States, 295 U.S. 78, 88 (1935). Tempered only by their impartial search for justice, prosecutors are to keep the interests of the State as their preeminent concern. Id.

On the other hand, "[t]he basic duty defense counsel owes to the administration of justice and as an officer of the court is to serve as the accused's counselor and advocate with courage and devotion and to render effective, quality representation." See ABA Standards for Criminal Justice 4-1.2(b) (3d ed. 1993). This duty requires defense counsel to exert every reasonable effort to protect the client's interests, both in the investigation and the trial of a case, by interviewing the client; apprising the client of his or her rights; conducting a thorough legal and factual investigation of the case; attempting to obtain information in the possession of the prosecution and law enforcement authorities; filing appropriate motions for the suppression of the evidence; raising all available claims, issues and defenses; conducting effective cross-examination of the State's witnesses; and

attempting to mitigate punishment if the client is convicted.  See, e.g., Nichols v. State, 90 S.W.3d 576 (Tenn. 2002); Goad v. State, 938 S.W.2d 363 (Tenn. 1996); State v. Melson, 772 S.W.2d 417 (Tenn. 1989); Baxter v. Rose, 523 S.W.2d 930 (Tenn. 1975).  In sum, counsel must be constantly guided by the obligation to pursue the defendant's interests and to do so to the fullest extent allowed by the law and applicable standards of professional conduct. See Culbreath, 30 S.W.3d at 314; Tenn. R. Sup. Ct. 8, EC 7-1.

These ethical duties and principles demonstrate that the Court of Criminal Appeals properly concluded that McDaniel's dual roles as assistant district attorney general and defense counsel in the same county were inherently antagonistic and thus, created an actual conflict of interest.  The ethical obligations of these dual roles required McDaniel to represent the interests of two adverse parties simultaneously and forced him to attempt to reconcile his duty to vigorously prosecute criminal offenses on behalf of the State with his duty to zealously defend the criminal defendant.  In his capacity as an assistant district attorney, for example, his ethical duties required him to advocate for the public and to seek justice.  In his capacity as defense counsel, however, his ethical duties required him to be a zealous advocate of White and an adversary to his fellow assistant district attorneys in Shelby County.  As the Board of Professional Responsibility has correctly observed, such a conflict would prove detrimental to the lawyer's representation:

> Prosecutors have taken an oath of office to uphold and apply state law in prosecutions and assist . . . law enforcement officers in prosecuting alleged crime.  Zealous representation of criminal defendants very often will require . . . vigorous cross-examination of the testimony of such law enforcement personnel, and in many instances will require challenging the very laws the prosecutor is charged to enforce.  Even if cross-examination of such personnel would not involve the disclosure of confidences and secrets of the state or municipality, the desire to maintain a harmonious working relationship with these law enforcement officers could adversely affect the inquiring attorney's zeal in conducting such cross-examination.

Formal Ethics Opinion 2002-F-146.  The Disciplinary Rules preventing conflicts of interests were specifically designed to free the lawyer's judgment from such "compromising interests and loyalties." Tenn. R. Sup. Ct. 8, EC 5-1; see also Blackwood, 46 S.W.3d at 187; Culbreath, 30 S.W.3d at 312-13.

We disagree with White's contention that McDaniel is independent of the Shelby County District Attorney's office and can ethically represent both him and the State.  As the trial court specifically found, there is necessarily a close relationship between the Collierville City Prosecutor and the Shelby County Sheriff's Department.  The Shelby County Sheriff's Department, in turn, partners with the Shelby County District Attorney's office in which McDaniel serves as an assistant district attorney.  As the trial court also found, McDaniel has worked with the Shelby County Sheriff's Department on one prosecution and is likely to have "regular contact" with the Department

on future prosecutions. As defense counsel, however, McDaniel must reverse roles completely by zealously pursuing available defenses, contesting the State's evidence, and vigorously cross-examining the State's witnesses, including law enforcement officers. Accordingly, we conclude that McDaniel is not independent of the Shelby County District Attorney's office, but rather, is part of the office and subject to its supervision. His service to the District Attorney while representing White involved inconsistent obligations sufficient to constitute an actual conflict of interest.

We also disagree with White's argument that our decision in State v. Jones, 726 S.W.2d 515 (Tenn. 1987), mandates a different conclusion. In Jones, we rejected the proposition that a conflict of interest, actual or apparent, necessarily inheres in an attorney's representation of a criminal defendant in a county in which the attorney is employed as the partner of the county attorney. However, our refusal to declare a blanket prohibition on such representations stemmed from the fact that the title of "county attorney" was imprecise and that in some Tennessee counties, the county attorneys' representation extends only to civil cases. See Jones, 726 S.W.2d at 520. Thus, Jones does not preclude the disqualification of counsel whose representations clearly involve inherently contradictory duties. Given the fact that the prosecutor always represents the State in prosecuting crimes and that we have herein found the duties of a prosecutor and defense attorney to be inherently antagonistic, we conclude that Jones does not control the issue at hand.

We also disagree with White's argument that he may unilaterally waive any actual or perceived conflict of interest. For a waiver to be effective, the Disciplinary Rules require *each* client to consent to the representation. See Tenn. Sup. Ct. R. 8, DR 5-105(C). As the trial court explained, the State has not done so in this case:

> As an employee of the Shelby County District Attorney's office, Mr. McDaniel has a duty to the citizens of Shelby County not to actively represent conflicting interests. Thus, even if the [appellant] could waive the conflict, as he claims he wishes to do, the state is not required to comply with such a waiver and cannot be compelled to effectively relinquish [its] right to object to the conflict of interest created when one of [its] members actively represents an opposing party.

Finally, we agree with the trial court's conclusion that the representation of White would not be prejudiced by McDaniel's disqualification. Indeed, McDaniel's disqualification is necessary to avoid a violation of White's constitutional right to counsel. As we stated in Jones, "it is axiomatic that the rights of the criminal defendant demand that there be no actual or perceived conflict of interest that would have any effect whatsoever upon the defense of the charges pending." Jones, 726 S.W.2d at 520. Thus, instead of hindering White's interests, we conclude, as did the trial court, that McDaniel's disqualification will prevent the actual conflict of interest discussed herein from interfering with White's right to fair and impartial representation.

In sum, we hold that the State has met its burden of proof in showing that McDaniel's dual roles as assistant district attorney general and criminal defense lawyer in the same county created an actual conflict of interest that the State could not be forced to waive.[5] We further conclude that this conflict of interest superseded the appellant's right to the counsel of his choosing. Accordingly, we conclude that the trial court did not abuse its discretion in disqualifying McDaniel from representing the appellant.

## CONCLUSION

After reviewing the record, we conclude that the facts in this case present an actual conflict of interest such that disqualification is required. Accordingly, the judgment of the Court of Criminal Appeals is affirmed. Costs of this appeal are taxed to the appellant, Jeremy White.

_____

E. RILEY ANDERSON, JUSTICE

---

[5] Although not applicable in this case, we believe the newly adopted Tennessee Rules of Professional Conduct are consistent with the result we have reached today. For example, Rule 1.7(a) reads:

> A lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless:
>
> (1) the lawyer reasonably believes the representation will not adversely affect the relationship with the other client; and
>
> (2) each client consents in writing after consultation.

As we have explained, McDaniel's representation of White was directly adverse to the State's interest in prosecuting him. Moreover, contrary to White's argument on appeal, the conflict could not be waived unilaterally because the new rules require that both clients waive the conflict. The State did not waive the conflict, nor was it required to do so under the circumstances of this case.