IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs December 7, 2004

**THOMAS L. JACKSON v. STATE OF TENNESSEE**

**Direct Appeal from the Circuit Court for Lauderdale County
Case No. 7248    Jon Kerry Blackwood, Judge**

_____

**No. W2004-00445-CCA-R3-PC  - Filed February 7, 2005**

_____

The Petitioner, Thomas L. Jackson, was convicted of possessing drugs in a penal facility, and the trial court sentenced him to fifteen years in prison. This conviction was affirmed on direct appeal, and the Tennessee Supreme Court denied the Petitioner's application for permission to appeal. The Petitioner subsequently filed a petition for post-conviction relief, alleging that he was denied the effective assistance of counsel, which the post-conviction court dismissed after a hearing. The Petitioner now appeals, contending that the post-conviction court erred when it dismissed his petition. Finding no reversible error, we affirm the post-conviction court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which DAVID H. WELLES and THOMAS T. WOODALL, JJ., joined.

Michael Dunavant, Ripley, Tennessee, for the Appellant, Thomas L. Jackson.

Paul G. Summers, Attorney General and Reporter; Preston Shipp, Assistant Attorney General; Elizabeth T. Rice, District Attorney General; and Tracey Brewer, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION
I. Facts**

On May 1, 2002, the Petitioner was convicted by a jury of possessing drugs in a penal facility, and the trial court sentenced him to fifteen years in prison to be served at sixty percent. This Court summarized the facts on direct appeal as follows:

> Approximately a week before November 29, 2001, Bobby Reynolds, Jr., an employee of the West Tennessee Security Prison, was monitoring phone calls and "heard where an inmate, [Robert Stokes,] had supposedly been making a drug deal, bringing drugs into the institution." However, Reynolds was unable to determine the exact date

Stokes intended to bring the drugs into the prison. On the morning of the 29th, Reynolds, along with Corporal Michael Ottinger, a correctional officer, reviewed a phone call from Stokes to his wife, Monica, made the prior evening around 8:30 p.m. According to Reynolds, Stokes "told his wife that he wanted ten dollars put on his thing." Money is not needed inside the penitentiary after 8:30 p.m. Ottinger testified that, in his experience, "ten dollars on my stuff" was a method of arranging a drug deal. During the conversation between Stokes and his wife, the Appellant "got on the phone, there was some three-ways made to some people that he knew on the streets. . . . There was some meetings set up between these individuals and Monica Stokes, . . . and it was also--instructions were given in the particular call to be sure and use gray duct tape." Ottinger testified that the Appellant "was the one in making the--setting up the deal for these other two individuals to meet Monica Stokes."

After reviewing the telephone conversation, Reynolds went and "shook down" the cells of Stokes and the Appellant. Reynolds found a cell phone inside Stokes cell, and he then proceeded to the Appellant's cell, where he "found a large amount of marijuana right inside on the shelf." Regarding the search of the Appellant's cell, Reynolds testified as follows:

> I was waiting for the pod officer to get there to open the door for me, and I was looking through the window, and I seen [the Appellant] over there where his shelf is with his clothes on fumbling with it, so when the pod officer opened the door, I walked past [the Appellant] and went over there, and he had two gray gloves--they was vinyl or something--and I looked inside of them and there was two big wads of gray tape there . . . .

Thereafter, the Appellant waived a Department of Correction disciplinary hearing and pled guilty to possession of marijuana. At trial, the Appellant stated, he pled guilty in order to protect his cellmate, who was due to be released in two weeks. The Appellant also claimed that, when he spoke to Monica Stokes, he was arranging a date for his brother. According to the Appellant, Stokes left the gloves in the Appellant's cell, and he was unaware that they contained marijuana.

The case was subsequently presented to the Grand Jury of Lauderdale County, and the Appellant was indicted for possession of contraband in a penal institution and possession of marijuana with intent to sell. Following a jury trial, the Appellant was found guilty of possession of contraband in a penal institution.

State v. Thomas L. Jackson, No. W2002-01631-CCA-R3-CD, 2003 WL 21392584, at *1-2 (Tenn. Crim. App., Jackson, June 10, 2003), *perm. app. denied* (Tenn. Nov. 3, 2003).

The Petitioner filed a pro se petition for post-conviction relief, which was later amended by appointed counsel. In his petition he alleged, in part, that he received ineffective assistance of counsel. The following evidence was presented at the hearing on the Petitioner's petition for post-conviction relief: Julie Pillow ("Counsel") testified that she has been a public defender for eleven years, and she represented the Petitioner in this case. She said that she met with the Petitioner on five occasions to discuss the Petitioner's case, and, during some of these meetings, the Petitioner's inmate advisor was present. Counsel testified that she was certain that she and the Petitioner had discussed the way she "handle[d] a case," which includes preparation for trial and "actively negotiat[ing]."

Counsel testified that, in her meetings with the Petitioner, she discussed with the Petitioner the State's offers for settlement and the plea negotiations. Counsel said that she and the Petitioner discussed the fact that the State was seeking to have the Petitioner sentenced as a career offender. She told the Petitioner that, if he were found guilty at a trial, he would be sentenced as a career offender to fifteen years, to be served at sixty percent. Counsel said that she attempted to negotiate a settlement with the State for a sentence of anything less than fifteen years at sixty percent, and she relayed any and all offers that the State made to the Petitioner.

Counsel testified that she and Assistant District Attorney Brewer ("ADA Brewer"), the prosecutor in the case, negotiated a proposed settlement agreement in the Petitioner's case on March 7, 2002. She said that she asked ADA Brewer, in writing, to consider dismissing Count 1 if the Petitioner pled guilty to Count 2, and was sentenced, as a career offender, to six years at sixty percent. In support for this offer, Counsel told ADA Brewer that the Petitioner's "priors" were over seventeen years old. Counsel testified that ADA Brewer responded to the note stating "No, 15 years at 60 percent, only offer on Count 1." She testified that, on March 11, 2002, ADA Brewer sent Counsel a handwritten note, stating that if the Petitioner would plead guilty to Count 1, the State would dismiss Count 2, and the parties would agree that the trial court would determine the sentence range. Counsel referred to this as a "blind plea," and she said that this plea would not have helped the Petitioner because, according to the notice of enhancement, the Petitioner was a career offender, and, therefore, the Court would have to sentence him to fifteen years at sixty percent.

Counsel testified about another plea negotiation that occurred in April of 2002. She identified a handwritten note from ADA Brewer, dated April 18, 2002, that advised Counsel that, if the Petitioner pled guilty to Count 1, the State would offer him a persistent range sentence, which would require him to serve his ten to fifteen years at forty-five percent, rather than sixty percent. Counsel stated that the note indicated that the State would also require that the Petitioner stipulate to "the drugs," some witnesses' names, and the chain of custody of the evidence.

Counsel testified that, according to her notes, she discussed this offer with the Petitioner on April 22, 2002. She stated that, while her notes read, "State's offer persistent; defendant declines offer and wants to take it to trial," she had no independent recollection of that conversation with the Petitioner. She said that she assumed that the Petitioner rejected the offer because it was "too much time," and she believed that he wanted to "take his chances at trial." Counsel testified that the

Petitioner had, at that point, given her a theory of defense for trial and, even though he was aware of the offer for persistent offender status, the Petitioner rejected the State's offer.

Counsel testified that if the Petitioner had accepted a plea agreement negotiated with the State there would not have been a trial. She stated that if the Petitioner had agreed to accept the offer for persistent offender, which would be ten to fifteen years at forty-five percent, he would have automatically received a lesser sentence than he received at trial. Counsel said that the plea negotiations were ongoing through March and April, but she did not receive any other offers from the State after the trial, which was on May 1, 2002.

Counsel testified that she and the Petitioner discussed whether he should testify in his own defense, but she did not have an independent recollection of their discussion. She said that it is her normal practice to discuss with her clients the jury trial process and go through the process "step-by-step." Counsel said that, during this process, she talks with her client about whether that client should testify. She said that she discusses the notice of enhancement and which prior convictions she thinks are admissible. Counsel testified that she next evaluates the State's proof with her client and discusses what the client could offer that would be helpful to the case. She said that she tells her clients that the decision about testifying will not be made until the close of the State's proof because that is when she determines whether it would be beneficial to have the client testify.

Counsel testified that she had received a copy of the notice of enhancement listing the Petitioner's prior criminal history, which dated back to 1984. She stated that she knew that the State had evidence of the prior convictions and that the State classified the Petitioner as a career offender. She testified that she filed a motion in limine for the court to determine which convictions could be used for impeachment purposes. Counsel identified a handwritten note from ADA Brewer, dated April 24, 2002, indicating that the State would use the prior convictions listed on the enhancement notice to impeach the Petitioner if he testified at trial. Counsel said that she knew that ADA Brewer would impeach the Petitioner with his prior convictions if he testified.

Counsel testified that she and the Petitioner discussed the Petitioner's right not to incriminate himself by testifying. She stated that she explained to the Petitioner that if he did take the stand, the State may be able to use his prior convictions against him for impeachment. She explained that, generally, after the court ruled on the motion in limine, but before her client testified, she would advise her client about what prior convictions can be used against the client. Counsel testified that, at no point, did the Petitioner tell her that he did not intend to testify. She said that she did not force the Petitioner to testify. She stated that her "personal preference" is for a defendant to not testify, but it is the defendant's decision.

Counsel testified that the only witness that she called was the Petitioner. She agreed that, based on the trial transcript, the court allowed the State to impeach the Petitioner with all of his convictions. She testified that, after the Petitioner testified and was impeached, he did not complain that he should not have testified, and she said that she would have made a note of such a statement.

Counsel testified that she was aware that the Petitioner had entered a guilty plea in a prison disciplinary proceeding process for marijuana possession in his cell. She said that she received written documentation of that plea, and she met with the inmate advisor who had assisted the Petitioner in his plea. She testified that she and the Petitioner discussed the impact of the prison board proceeding, including that the State would attempt to use that proceeding against him. Counsel testified that she could not recall whether she and the Petitioner discussed filing a motion to suppress the prison proceeding, but she said that she did not file such a motion because she was unaware of any legal basis for the proceeding's exclusion.

Counsel testified that the prison case involved a large quantity of marijuana found in a pair of gloves in the Petitioner's prison cell. She said that the Petitioner claimed he did not know about the marijuana and that it belonged to another inmate who left it in the gloves. Counsel testified that she did not specifically remember stipulating to the chemical analysis report of the controlled substance, but, normally, if there is a stipulation it would be written in the file. She said that she did not know if there was such a written stipulation in the Petitioner's file. Counsel testified that she never thought there was an issue about the testing or chemical composition of the drugs found in the Petitioner's cell, but she did not recall how the State introduced the drugs as a controlled substance without a TBI agent testifying.

Counsel testified that ADA Brewer also asked her to stipulate to the chain of custody of the drugs found in the Petitioner's cell because the officer who had confiscated and handled the drugs would be unavailable at trial. She said that she did not recall whether she agreed to this stipulation, but her notes did not reflect this stipulation, and she did not review the original court file. Counsel testified that she had a handwritten note, dated April 22, 2002, stating that the Petitioner would not agree to a chain of custody stipulation, and, therefore, she would assume that she followed his instruction. She stated that she had no independent recollection of how the State was able to introduce the chain of custody evidence, and she did not remember if she objected at trial.

Counsel testified that she knew that the charges the Petitioner was facing stemmed from a tape recorded telephone conversation that the Petitioner placed from prison. She said that the State did not provide her with these recorded conversations during discovery because the State said that the conversations were recorded over and did not exist. Counsel said that she did not inform the court that the tape recordings were lost or destroyed evidence, and she did not recall if the court gave an instruction about lost or destroyed evidence. Counsel testified that she did, however, bring out the fact that the tape no longer existed during cross-examination. Counsel testified that, with the exception of the guilty plea negotiations, she did not believe that any of the issues would have changed the outcome of the trial.

On cross-examination, Counsel said that the State never offered the Petitioner six years as a career offender, and the Petitioner chose to go to trial. She stated that the Petitioner chose to testify, and she did not make him testify. She agreed that the Petitioner was a career offender and had several convictions. She testified that she kept the Petitioner informed during the ongoing negotiations with the State.

The Petitioner testified that he is serving a fifteen-year sentence, as a career offender, at sixty percent, for the possession of contraband in an institution. He said that Counsel was his attorney, and she met with him between three to five times prior to his trial. He said that, when he first met with Counsel, Counsel told him that she was going to attempt to work out a plea agreement with the State. The Petitioner testified that the only offer that Counsel relayed to him was for fifteen years as a career offender, which was the maximum penalty that could be imposed upon him if he went to trial. The Petitioner indicated that he later learned that the State offered to allow him to plead guilty to this offense as a persistent offender, with a sentence of fifteen years, to be served at forty-five percent. The Petitioner denied that Counsel relayed this offer to him, and he denied that he rejected this offer. He said that he would have accepted this offer if Counsel had relayed it to him.

The Petitioner testified that at his trial he did not want to take the stand, but Counsel told him that it would be in his best interest so that he could tell his side of the story. He said that Counsel told him that, if he did not take the stand, the jury would think that he was holding something back. The Petitioner said that Counsel never told him that he would be questioned about his prior convictions if he testified. He said that he thought that Counsel forced him to testify. Further, he said that Counsel never explained his constitutional right not to incriminate himself. The Petitioner said that he pled guilty to possessing marijuana in a prison disciplinary proceeding, and Counsel did not tell him that this plea would be used against him in the criminal proceeding. He said that he thought that Counsel should have moved to suppress this evidence or should have objected to its admittance at trial, and, when he asked Counsel about this, she told him that it was "the procedure that they . . . had to go through."

The Petitioner testified that Counsel told him that she wanted to stipulate to the chain of custody, and the Petitioner told her "no." He said that he never agreed to allow her to stipulate to this, but she stipulated to it anyway. The Petitioner also said that he told Counsel that he thought that there may be some evidence on the tape recorded phone call that would help him. Later, when the tape recording came up, Counsel was not going to say anything so the Petitioner asked her about it and she said, "It'll be all right. I got that . . . ."

On cross-examination, the Petitioner said that his inmate advisor, Mays, was a witness to his conversations with Counsel. He then read a portion of Mays testimony from a previous proceeding in which Mays admitted that he told the ADA that the Petitioner was "guilty as sin about that possession of marijuana in his cell." The Petitioner then admitted that he had previously been convicted of: First degree burglary; two counts of robbery with a deadly weapon; petit larceny; simple robbery; grand larceny; burglary; and burglary of a vehicle. The Petitioner conceded that he and Counsel discussed strategy, and he admitted that he was familiar with the court system. The Petitioner asserted that Counsel should have presented the tape that he "made the deal on" because he was not actually talking about drugs on the tape. He conceded, however, that there was no way to know whether the jury would have believed that he was not discussing drugs on the tape.

The post-conviction court dismissed the Petitioner's petition for post-conviction relief, and the Petitioner now appeals.

## II. Analysis

On appeal, the Petitioner contends that the post-conviction court erred when it dismissed his petition because Counsel was ineffective by: (1) failing to communicate an offer of settlement by the State to him to plead guilty to count 1 of the indictment with an agreed sentence of ten to fifteen years at forty-five percent; (2) failing to instruct him about his constitutional right to elect or decline to testify and inform him that his prior conviction records could be used to impeach his testimony; (3) failing to object to the chain of custody of the evidence; and (4) failing to file a pre-trial motion to exclude the use and admission of any testimony or evidence about the contents of a tape recording and failing to, after learning that the tape was lost or destroyed, request a jury instruction on the duty to preserve evidence.

With regard to the issues on appeal, the post-conviction court, when it dismissed the Petitioner's petition, found:

(A) Petitioner claims that the only offer of settlement he received from [C]ounsel was fifteen years at 60%. He stated that he would have accepted any other negotiated plea, other than the above mentioned. He claims [Counsel] never communicated a lesser offer from the State. [Counsel] testified she relayed an offer to plead as a persistent offender to serve ten to fifteen years, and that [P]etitioner rejected the plea offer. The Court resolves the conflict in favor of the State, and finds the issue without merit.

(B) Petitioner claims he was forced to testify at trial by [Counsel]. While having no recollection of their conversation, [Counsel] detailed her normal practice, wherein she discussed the decision of the [Petitioner] to testify or to invoke his Fifth Amendment right to refuse to testify. The Court resolves the issue in favor of the State. The issue is without merit.

(C) Petitioner claims [Counsel] did not file a Motion to Suppress a guilty plea entered by the [P]etitioner at a disciplinary hearing at the prison. Petitioner has failed to show how the admission of this plea affected the verdict, and would have changed the outcome of the trial.

(D) Petitioner claims [Counsel] did not request a jury instruction on failure to preserve evidence. This issue centers on a telephone call to the [P]etitioner that was taped by prison officials. The call alerted the officials that the [P]etitioner might have contraband within the prison. The jury instruction which [P]etitioner claims [Counsel] was ineffective in failing to request deals with exculpatory evidence. Petitioner has failed to show how this tape might have been exculpatory.

(E) Finally, petitioner claims [Counsel] was ineffective in stipulating the chain of custody and the lab report. Admittedly, [P]etitioner instructed [Counsel] not to

-7-

stipulate. However, the issue in the trial was not whether the substance found was contraband, but to whom did it belong. Similarly, the State could easily prove chain of custody, if required.

In order to obtain post-conviction relief, a petitioner must show that his or her conviction or sentence is void or voidable because of the abridgment of a constitutional right. Tenn. Code Ann. § 40-30-103 (2003). The petitioner bears the burden of proving factual allegations in the petition for post-conviction relief by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f). A post-conviction court's factual findings are subject to a <u>de novo</u> review by this Court; however, we must accord these factual findings a presumption of correctness, which is overcome only when a preponderance of the evidence is contrary to the post-conviction court's factual findings. <u>Fields v. State</u>, 40 S .W.3d 450, 456 (Tenn. 2001). A post-conviction court's conclusions of law are subject to a purely <u>de novo</u> review by this Court, with no presumption of correctness. <u>Id.</u> at 457.

The right of a criminally accused to representation is guaranteed by both the Sixth Amendment to the United States Constitution and Article I, section 9, of the Tennessee Constitution. <u>State v. White</u>, 114 S.W.3d 469, 475 (Tenn. 2003); <u>State v. Burns</u>, 6 S.W.3d 453, 461 (Tenn. 1999); <u>Baxter v. Rose</u>, 523 S.W.2d 930, 936 (Tenn. 1975). This right to representation includes the right to "reasonably effective" assistance. <u>Burns</u>, 6 S.W.3d at 461. The Tennessee Supreme Court has held that the issue of ineffective assistance of counsel is a mixed question of law and fact and, as such, is subject to a <u>de novo</u> review. <u>Id.</u>

In reviewing a claim of ineffective assistance of counsel, this Court must determine whether the advice given or services rendered by the attorney are within the range of competence demanded of attorneys in criminal cases. <u>Baxter</u>, 523 S.W.2d at 936. To prevail on a claim of ineffective assistance of counsel, a petitioner must show that "counsel's representation fell below an objective standard of reasonableness," <u>Strickland v. Washington</u>, 466 U.S. 668, 688 (1984), and that this performance prejudiced the defense, resulting in a failure to produce a reliable result. <u>Id.</u> at 687; <u>Cooper v. State</u>, 849 S.W.2d 744, 747 (Tenn. 1993). To satisfy the requirement of prejudice, a petitioner must show a reasonable probability that, but for counsel's unreasonable error, the fact finder would have had reasonable doubt regarding the petitioner's guilt. <u>Strickland</u>, 466 U.S. at 695. This reasonable probability must be "sufficient to undermine confidence in the outcome." <u>Id.</u> at 694; <u>see also Harris v. State</u>, 875 S.W.2d 662, 665 (Tenn. 1994).

When evaluating an ineffective assistance of counsel claim, the reviewing court should judge the attorney's performance within the context of the case as a whole, taking into account all relevant circumstances. <u>Strickland</u>, 466 U.S. at 690; <u>State v. Mitchell</u>, 753 S.W.2d 148, 149 (Tenn. Crim. App. 1988). The reviewing court must evaluate the questionable conduct from the attorney's perspective at the time. <u>Strickland</u>, 466 U.S. at 690; <u>Cooper</u>, 849 S.W.2d at 746; <u>Hellard v. State</u>, 629 S.W.2d 4, 9 (Tenn. 1982). In doing so, the reviewing court must be highly deferential and "should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." <u>Burns</u>, 6 S.W.3d at 462. Counsel should not be deemed to have been ineffective merely because a different procedure or strategy might have produced a different

result. <u>Williams v. State</u>, 599 S.W.2d 276, 279-80 (Tenn. Crim. App. 1980). The fact that a particular strategy or tactic failed or hurt the defense does not, standing alone, establish unreasonable representation. <u>House v. State</u>, 44 S.W.3d 508, 515 (Tenn. 2001) (citation omitted); <u>Thomas Brandon Booker v. State</u>, No. W2003-00961-CCA-R3-PC, 2004 WL 587644, at *4 (Tenn. Crim. App., at Jackson, Mar. 24, 2004), *no perm. app. filed*. However, deference to matters of strategy and tactical choices applies only if the choices are informed ones based upon adequate preparation. <u>House</u>, 44 S.W.3d at 515.

In the case under submission, the Petitioner first contends that Counsel was ineffective by failing to communicate an offer of settlement by the State to him to plead guilty to count 1 of the indictment with an agreed sentence of ten to fifteen years at forty-five percent. Counsel testified that she relayed this offer to the Petitioner and that the Petitioner rejected this offer. Counsel's notes from her April 22, 2002, meeting with the Petitioner also indicate that she informed the Petitioner of this offer, and he rejected it. The Petitioner testified that he was unaware of this offer. The post-conviction court resolved this conflict in favor of the State, and we conclude that the evidence does not preponderate against this finding.

Next, the Petitioner contends that Counsel was ineffective because she failed to instruct him about his constitutional right to elect or decline to testify and inform him that his prior conviction records could be used to impeach his testimony. Counsel testified that she and the Petitioner discussed whether he should testify in his own defense, but she did not have an independent recollection of their discussion. Counsel said that it is her normal practice to discuss with her client the jury process, including whether her client should testify. Counsel testified that she explained that if the Petitioner testified, his prior convictions could be used to impeach him. She said that the Petitioner never expressed a desire not to testify. The Petitioner claimed that Counsel forced him to testify. The post-conviction court resolved this conflict in favor of the State. We conclude that the evidence does not preponderate against this finding.

The Petitioner also contends that Counsel was ineffective by failing to object to the chain of custody of the evidence. Counsel testified that she did not recall whether she stipulated to the chain of custody. She said that the Petitioner told her not to stipulate to this, and she thought that she would have followed this direction. Counsel said that she had no independent recollection of how the State introduced the chain of custody evidence, and she did not remember objecting. The Petitioner testified that he told Counsel not to stipulate to the chain of custody, but she did anyway. The post-conviction court found that the issue at the Petitioner's trial was not whether the substance found was contraband, but to whom the substance belonged. Further, the court found that the State could have easily proven the chain of custody if it was so required. We conclude that the Petitioner has not proven that Counsel stipulated to the chain of custody. There is nothing in the record that proves any such stipulation. Even had the Petitioner proven that Counsel so stipulated, he has not shown that this action fell below an objective standard of reasonableness, and he has not shown how he was prejudiced by this alleged stipulation. The trial court correctly found that the issue at the Petitioner's trial was whether the marijuana belonged to the Petitioner, not whether it was properly determined to be marijuana.

Finally, we address the Petitioner's contention that Counsel was ineffective by not requesting a jury instruction on the duty to preserve evidence after Counsel learned that the tape recording of his phone conversation that lead to the discovery of contraband in his cell was lost or destroyed. Counsel testified that she did not inform the court that the tape recordings were lost or destroyed evidence, and she did not recall if the court gave an instruction about lost or destroyed evidence. Counsel testified that she did, however, bring out the fact that the tape no longer existed during cross-examination. The Petitioner testified that he told Counsel that he thought that there may be some evidence on the tape recording of his phone call that would help him. The post-conviction court found that the call alerted the prison officials that the Petitioner might have contraband in the prison. Further, the court held that the jury instruction that the Petitioner requested dealt with exculpatory evidence, and the Petitioner failed to show how the tape might have been exculpatory. We conclude that the evidence does not preponderate against the post-conviction court's findings. Further, we conclude that the Petitioner has also failed to show how he was prejudiced by Counsel's failure to request this instruction. This issue is without merit.

### III.  Conclusion

In accordance with the foregoing reasoning and authorities, we affirm the post-conviction court's judgment dismissing the Petitioner's petition for post-conviction relief.

_____
ROBERT W. WEDEMEYER, JUDGE