IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs October 19, 2021

**VERCHAUNT J. WILLIAMS v. STATE OF TENNESSEE**

**Appeal from the Circuit Court for Montgomery County
Nos. 41200439, 63CC1-2012-CR-457    William R. Goodman, III, Judge**

_____

**No. M2020-00512-CCA-R3-PC**
_____

The petitioner, Verchaunt J. Williams, appeals the denial of his petition for post-conviction relief, which petition challenged his convictions of first degree murder, tampering with evidence, and abuse of a corpse, alleging that he was deprived of the effective assistance of counsel. Discerning no error, we affirm the denial of post-conviction relief.

**Tenn. R. App. P. 3; Judgment of the Circuit Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which D. KELLY THOMAS, JR., and ROBERT H. MONTGOMERY JR., JJ., joined.

Jay Umerley, Nashville, Tennessee (on appeal)[1]; and Greg A. Talley, Clarksville, Tennessee (at hearing), for the appellant, Verchaunt J. Williams.

Herbert H. Slatery III, Attorney General and Reporter; T. Austin Watkins, Assistant Attorney General; John W. Carney, Jr., District Attorney General; and Helen Young, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

A Montgomery County jury convicted the petitioner of one count each of first degree murder, tampering with evidence, and abuse of a corpse for the January 2012 death of the victim, Brandon Rushing, and the petitioner received an effective sentence of life plus five years. *State v. Verchaunt Joshua Williams*, No. M2015-02049-CCA-R3-CD, 2015 WL 5032051, at *1-2 (Tenn. Crim. App., Nashville, Aug. 26, 2015).

---

[1]    Post-conviction counsel moved to withdraw on appeal, which motion this court initially denied. After the submission of briefs by both parties, this court granted counsel's motion to withdraw, struck the parties' briefs, and appointed Mr. Umerley to represent the petitioner on appeal.

The evidence adduced at trial showed that on January 23, 2012, the petitioner went to the apartment of Asia Graves, armed with a gun, looking to take care of "some business" with Ms. Graves' ex-boyfriend, Leo Bakke. Mr. Bakke was not at the apartment at the time. Over the course of an hour, the petitioner "was intermittently leaving and returning to the apartment" and, "[d]uring one phone call," he gave "directions to the apartment building." The victim arrived shortly after the telephone call, and the petitioner "ordered Ms. Graves to go outside." While Ms. Graves met the victim and escorted him into the apartment, the petitioner "was in Ms. Graves' bedroom in the back of the apartment." He concealed a gun inside of Ms. Graves' makeup bag and entered the kitchen where the victim was seated. The petitioner shot the victim in the head and stood over his body and said, "I got that mother f*****r, he's dead now." The petitioner "exclaimed that he would be the 'King of Clarksville' and told Ms. Graves that she would be taken care of financially as long as she did not tell anyone what she had seen." The petitioner boasted to Jeff Jackson about killing the victim and "had Ms. Graves talk to Mr. Jackson to confirm the victim's death." The petitioner rolled the victim's body in a blanket, cut out portions of the carpet and flooring with the victim's blood, and cleaned the apartment with bleach. With the help of Mr. Jackson and Ojawaine Marbury, the petitioner "carried the body to the victim's car and crammed the body into the back seat." The men also "placed carpet fiber, towels with bleach on them, 'and basically everything that . . . would be incriminating' into garbage bags and into the car." The petitioner also "place[d] a can of gasoline into the car" and "drove the victim's car onto Ashland City Road, and Mr. Jackson and Mr. Marbury followed behind him in a separate car. The [petitioner] parked the victim's car in a secluded location and set the car on fire." Several days later, the petitioner returned to the scene "so that he could burn the remains of the vehicle." *Id.* at *1-3.

The petitioner filed a pro se petition for post-conviction relief, and after the appointment of counsel, filed an amended petition, alleging numerous instances of deficient performance by trial and appellate counsel, including that counsel failed to withdraw from representation despite a conflict of interests. The post-conviction court held a bifurcated evidentiary hearing on March 20, 2019, and May 15, 2019.

At the March 20, 2019 hearing, the petitioner testified[2] that he asked trial counsel "to do certain things and he wasn't doing them." He said that after receiving discovery materials, trial counsel told him that one of the State's witnesses, Eric Ferrer, was a previous client of his but that the petitioner should not worry because "[i]t's not a conflict of interest." He said that counsel did not further discuss the matter with him and did not ask him to waive the conflict. The petitioner said that, at trial, counsel failed to adequately cross-examine Mr. Ferrer, asking Mr. Ferrer only about his relationship "with the Mulberry's . . . and that's pretty much all he asked him."

---

[2]     We will recite only the evidence relevant to this appeal.

The petitioner said that he never received "Mr. Ferrer's police interview transcripts" despite trial counsel's indicating that he needed them for trial. On another occasion, trial counsel told the petitioner "that he could pick up the phone and call Eric anytime he wanted to." On another occasion, when the State "couldn't find Eric Ferrer right before the trial," counsel "said that he was probably off on some kind of dope binge."

During cross-examination, the petitioner said that trial counsel told him that his prior representation of Mr. Ferrer was not a problem and acknowledged that he did not ask counsel to withdraw from representation. He denied that the conflict was addressed in court. The petitioner reiterated that trial counsel told him that he needed transcripts of Mr. Ferrer's interview with the police for trial but said that counsel did not have the transcript at trial. He said that counsel failed to provide him with an audio recording of Mr. Ferrer's police interview and that he did not know what Mr. Ferrer's testimony at trial would be. He said that he knew about Mr. Ferrer's interview because in the discovery materials, there was a record indicating that an officer interviewed Mr. Ferrer after the preliminary hearing. The petitioner said that he was unable to prepare a defense or make an informed decision on a plea offer because he did not know what statements Mr. Ferrer had made to the police or to what he was going to testify at trial. The petitioner also said that because of trial counsel's prior representation of Mr. Ferrer, counsel did not effectively cross-examine Mr. Ferrer. As one example, the petitioner pointed out that trial counsel failed to question Mr. Ferrer about his involvement in the crime after another witness implicated him.

Trial counsel testified he had represented Mr. Ferrer "on a D.U.I. in General Sessions Court" and that he "didn't see" a potential conflict with that prior representation. He explained that he did not think that his prior representation of Mr. Ferrer was "relevant" because "[i]t was a misdemeanor and didn't go to truthfulness." He denied that his representation of Mr. Ferrer affected his representation of the petitioner or his cross-examination of Mr. Ferrer. He recalled that he told the petitioner about the prior representation and that the petitioner did not raise any concern about the matter.

During cross-examination, trial counsel testified that he did not have a standard practice of conflict checks when he took on a new client. He said that he remembered having represented Mr. Ferrer because "[i]t's kind of an unusual name." He did not recall the specifics of his conversation with the petitioner but said, "I probably said 'I represented him before on some misdemeanors.'" He said that he did not cross-examine Mr. Ferrer on his prior charges because "they were misdemeanors" and "even if they were convictions, I don't think it would have been proper cross-examination." He acknowledged that it was common in his cross-examination of State witnesses to ask whether they had been drinking alcohol or "'doing any illegal drugs'" at the time of an incident but said that he, otherwise, did not ask about a witness's general drug or alcohol use or history of addiction.

The post-conviction court continued the evidentiary hearing to allow the parties an opportunity to exhibit an affidavit of appellate counsel to the hearing. Although the post-conviction court's order denying post-conviction relief indicates that an affidavit "was admitted by stipulation," the affidavit does not appear in the record. The evidentiary hearing resumed on May 15, 2019, for the parties' arguments.

In its written order denying post-conviction relief, the post-conviction court found that counsel advised the petitioner that he had previously represented Mr. Ferrer and that the petitioner "advised counsel that he had no objection to counsel proceeding in representation of him." The court concluded that the petitioner failed to establish that "trial counsel's representation . . . was limited in any way by counsel's prior representation of Eric Ferrer." The court also concluded that "there is no proof that [the p]etitioner's interest was adverse to Mr. Ferrer."

In this appeal, the petitioner reasserts his argument that trial counsel performed deficiently by continuing to represent him despite a conflict of interests.

We view the petitioner's claim with a few well-settled principles in mind. Post-conviction relief is available only "when the conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103. A post-conviction petitioner bears the burden of proving his or her factual allegations by clear and convincing evidence. *Id.* § 40-30-110(f). On appeal, the appellate court accords to the post-conviction court's findings of fact the weight of a jury verdict, and these findings are conclusive on appeal unless the evidence preponderates against them. *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997); *Bates v. State*, 973 S.W.2d 615, 631 (Tenn. Crim. App. 1997). By contrast, the post-conviction court's conclusions of law receive no deference or presumption of correctness on appeal. *Fields v. State*, 40 S.W.3d 450, 453 (Tenn. 2001).

Before a petitioner will be granted post-conviction relief based upon a claim of ineffective assistance of counsel, the record must affirmatively establish, via facts clearly and convincingly established by the petitioner, that "the advice given, or the services rendered by the attorney, are [not] within the range of competence demanded of attorneys in criminal cases," *see Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975), and that counsel's deficient performance "actually had an adverse effect on the defense," *Strickland v. Washington*, 466 U.S. 668, 693 (1984). In other words, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Should the petitioner fail to establish either deficient performance or prejudice, he is not entitled to

-4-

relief.  *Id.* at 697; *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996).  Indeed, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed."  *Strickland*, 466 U.S. at 697.

When considering a claim of ineffective assistance of counsel, a reviewing court "begins with the strong presumption that counsel provided adequate assistance and used reasonable professional judgment to make all significant decisions," *Kendrick v. State*, 454 S.W.3d 450, 458 (Tenn. 2015) (citation omitted), and "[t]he petitioner bears the burden of overcoming this presumption," *id.* (citations omitted).  We will not grant the petitioner the benefit of hindsight, second-guess a reasonably based trial strategy, or provide relief on the basis of a sound, but unsuccessful, tactical decision made during the course of the proceedings.  *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994).  Such deference to the tactical decisions of counsel, however, applies only if the choices are made after adequate preparation for the case.  *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

To succeed on a claim of ineffective assistance of counsel based on an alleged conflict of interests, the petitioner must establish that the conflict was "actual and significant, not irrelevant or 'merely hypothetical.'" *Clifton D. Wallen v. State*, No. E2000-02052-CCA-R3-PC, 2001 WL 839533, at *1 (Tenn. Crim. App., Knoxville, July 25, 2001) (quoting *Howard Clifton Kirby v. State*, No. 03C01-9303-CR-00074, 1994 WL 525086 (Tenn. Crim. App., Knoxville, Sept. 28, 1994)).  A mere potential conflict of interests is not enough to establish a claim of ineffective assistance of counsel.  *See Cuyler v. Sullivan*, 446 U.S. 335, 350 (1980) ("But until a defendant shows that his counsel actively represented conflicting interests, he has not established the constitutional predicate for his claim of ineffective assistance.").  When an actual conflict of interests exists, prejudice is presumed but "only if the defendant demonstrates that counsel 'actively represented conflicting interests' and that 'an actual conflict of interest adversely affected his lawyer's performance.'" *Strickland*, 466 U.S. at 692 (citing *Cuyler*, 446 U.S. at 350).

As relevant here, the Tennessee Rules of Professional Conduct provide that "[a] concurrent conflict of interest exists if . . . there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer."  Tenn. Sup. Ct. R. 8, RPC 1.7(a)(2).  A lawyer may represent a client despite a concurrent conflict of interests if, among other things, "each affected client gives informed consent, confirmed in writing."  *Id.* RPC 1.7(b)(4).  Our supreme court "has clarified that an actual conflict of interest includes any circumstances in which an attorney cannot exercise his or her independent professional judgment free of 'compromising interests and loyalties.'" *State v. White*, 114 S.W.3d 469, 476 (Tenn. 2003) (quoting *State v. Culbreath*, 30 S.W.3d 309, 312-13 (Tenn. 2000)).

-5-

The petitioner has failed to establish that trial counsel performed deficiently. First, the petitioner has not shown that an actual conflict of interests existed. That counsel previously represented a State witness does not alone give rise to an actual conflict of interests. The petitioner has failed to present any evidence that trial counsel could not "exercise his . . . independent professional judgment free of 'compromising interests and loyalties'" because of his prior representation of Mr. Ferrer. *See id.* Furthermore, the petitioner failed to present what additional evidence trial counsel could have elicited from Mr. Ferrer or what evidence counsel could have presented to impeach Mr. Ferrer's testimony. At trial, Mr. Ferrer testified that on the night of the offenses, the petitioner asked him to help dispose of a body. Trial counsel cross-examined Mr. Ferrer, asking him only how long he had known the petitioner and how the two had met. Because the petitioner did not call Mr. Ferrer at the evidentiary hearing to establish what other evidence trial counsel could have elicited with further cross-examination, he has failed to show that he was prejudiced by counsel's conduct. *See Black v. State*, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990) (an appellate court cannot "speculate or guess on the question of . . . what a witness's testimony might have been if introduced by defense counsel").

Accordingly, the judgment of the post-conviction court is affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE