IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs November 29, 2006

## JOHN WHATLEY v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Maury County**
**No. 13006     Stella Hargrove, Judge**

---

**No. M2006-00250-CCA-R3-PC - Filed January 22, 2007**

---

The Appellant, John Whatley, appeals the judgment of the Maury County Circuit Court denying post-conviction relief. Whatley is currently serving an eleven-year sentence in the Department of Correction as a result of his conviction for aggravated sexual battery. On appeal, Whatley argues that he was denied his Sixth Amendment right to the effective assistance of counsel, specifically arguing that trial counsel was ineffective in: (1) "failing to adequately consult with and prepare [Whatley] for trial"; (2) failing to present a potential defense witness at trial; (3) opening the door for the introduction of prejudicial testimony; and (4) failing to properly preserve a conflict of interest issue for appeal. After review, the judgment of the post-conviction court is affirmed.

**Tenn. R. App. P. 3; Judgment of the Circuit Court Affirmed**

DAVID G. HAYES, J., delivered the opinion of the court, in which ALAN E. GLENN and D. KELLY THOMAS, JR., JJ., joined.

Ryan D. Brown, Columbia, Tennessee, for the Appellant, John Whatley.

Robert E. Cooper, Jr., Attorney General and Reporter; Preston Shipp, Assistant Attorney General; Mike Bottoms, District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

**Factual Background**

The facts underlying the Appellant's conviction, as established on direct appeal, are as follows:

> On March 22, 2002, the appellant was indicted for rape of a child. The proof adduced at trial, taken in the light most favorable to the State, revealed that at the end of February or the beginning of March 1996, the appellant lived in a mobile home at 207 Lewis Street in Woodland Trailer Park in Columbia. Several family members also lived in the mobile home, including Lisa Frazier, the appellant's girlfriend and

the victim's mother, and the then three-year-old victim, the child of Frazier and the appellant. While living at the mobile home, the victim shared a bedroom with his brother, AF. The victim, who was ten years old at the time of trial, testified that he and AF were not allowed out of the room to eat or use the bathroom. There was no toilet in the bedroom; therefore, the victim and AF urinated and defecated on "[a]nything that we could." Additionally, the bedroom had a window, but the victim could not see out the window because it was covered with duct tape. The victim stated that he did not know the color of the mobile home "because I never seen the outside until I moved out."

During a weekday when it was light outside, the appellant came to the bedroom the victim and AF shared. The appellant picked up the victim and carried him to the bathroom. The victim recalled that the bathroom had "kind of like sunflower wallpaper" and "some kind of fur on the toilet." Once in the bathroom, the appellant locked the door, pulled down his pants, and put his penis in the victim's mouth. The victim described the appellant's penis as being "very hard and it had hair." After the offense, the appellant ordered the victim not to tell anyone what had happened. The victim recalled that the offense occurred "[a]t least a few months" before November 1996 when he was removed from the appellant's custody.

On November 27, 1996, Gloria Kelly, an employee of the Department of Children's Services, visited the appellant's mobile home in Maury County. She found all residents except the victim and AF in the living room of the home. She was informed that the two boys were in the bedroom. Kelly entered the bedroom where she found the victim and AF. Kelly noticed that the room contained no beds, and it was extremely dark because aluminum foil covered the windows. The victim and AF were scantily dressed and appeared malnourished and hungry. Bits of torn diaper were scattered around the room, and the room was "saturated with urine" and had a "strong feces smell." The four children were removed from the appellant's home.[1]

*State v. John Whatley*, No. M2003-01773-CCA-R3-CD (Tenn. Crim. App. at Nashville, May 9, 2005). Following a jury trial, the Appellant was convicted of the lesser included offense of aggravated sexual battery and subsequently sentenced to a term of twelve years in the Department of Correction. *Id*. The Appellant then filed a direct appeal with this court, raising multiple issues for review. Following review, a panel of this court affirmed the conviction but modified the Appellant's sentence to eleven years in light of *Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531 (2004).

---

[1]Two of the children, the victim and AF, were never returned to the custody of their parents. Additionally, both the Appellant and Lisa Frazier pled guilty to misdemeanor child abuse on April 29, 1999, based upon their actions of keeping the children in these conditions.

On July 15, 2005, the Appellant filed a *pro se* petition for post-conviction relief upon the ground of ineffective assistance of counsel. Following the appointment of counsel, an amended petition was filed on October 7, 2005, alleging additional deficient performance by trial counsel. A hearing was held on January 17, 2006, at which only trial counsel and the Appellant were called as witnesses.

Trial counsel testified at the hearing that he represented the Appellant at his criminal trial, as well as in a termination of parental rights proceeding in juvenile court which preceded the criminal charge. Although the juvenile court proceeding was heard first, the ruling in that case followed the Appellant's conviction for aggravated sexual battery. Trial counsel stated that he met with the Appellant at least seven to eight times in preparation for the criminal trial and engaged in numerous telephone conversations with the Appellant regarding the case. Counsel stated that he discussed the facts of the case with the Appellant and explained the elements of the offense which the State was required to establish in order to obtain a conviction. Additionally, he testified that he reviewed the evidence he received from the State during the discovery process with the Appellant, as well as conveying multiple plea offers which the State had extended. Trial counsel testified that the Appellant refused all offers and insisted upon going to trial.

Counsel stated that because the Appellant's case basically turned on the credibility of the victim, who was three-years old at the time of the offense, his defense strategy was to challenge the victim's recollection of the events surrounding the charged crime. This strategy was discussed with the Appellant on multiple occasions. During preparations for trial, the Appellant gave trial counsel the name of three possible witnesses, two of which trial counsel chose not to utilize as they were strictly character witnesses with no knowledge of the actual disputed facts of the case. Counsel testified that he chose not to place the Appellant's character into question because he was concerned this could lead to the introduction of prior instances of child neglect or abuse and the deplorable living conditions of the Appellant's home. Trial counsel also acknowledged that the Appellant alluded to a third possible witness, Flossie Richards, who had lived with the Appellant's family for a period of time in 1996. However, based upon the information provided by the Appellant, trial counsel recalled that Richards was residing in the mobile home in November 1996 when the children were removed by Department of Children's Services, but Richards was not residing with the Appellant and his family when the aggravated sexual battery occurred, which was at least several months earlier. At the time of the post-conviction hearing, Richards was deceased.

Trial counsel testified that he filed a pre-trial motion to exclude any reference to the Appellant's prior conviction for child abuse, as well as any reference to the conditions of the home where the family resided. The court ruled that the living conditions of the mobile home were not admissible unless they became relevant during the course of the trial. During examination of the victim, trial counsel elicited testimony that the victim had lived in more than one mobile home, suggesting that the victim was confused as to the specific mobile home where the crime had

occurred.[2] Immediately following trial counsel's questioning of the victim, the State requested that it be permitted to introduce proof of the living conditions of the mobile home as the Appellant had opened the door on this issue. Following a jury-out hearing, the trial court allowed the State to introduce testimony regarding the living conditions of the mobile home where the abuse occurred. Specifically, the State was allowed to elicit testimony from the victim about the conditions, as well as from two Department of Children's Services workers. Trial counsel testified that he did not believe, based upon his questions to the victim, that the trial court would allow the State to introduce evidence of the conditions of the mobile home. Trial counsel testified at the post-conviction hearing that he thought his questions to the victim of the specific mobile home

> "[were] key information, you know, as far as to get in the trailer situation, this happened in another trailer, he lived in another trailer, to test the child's mental status and when he remembered, you know, from the time when he was testifying something happened when he was 3-years old."

Trial counsel testified that after the denial of the motion for new trial on June 17, 2003, he became aware that the assistant district attorney who prosecuted the Appellant's case was employed as an assistant public defender in 1996, when Lisa Frazier, the mother of the victim, was charged with child abuse. The abuse charge stemmed from the adverse living conditions of the mobile home in which she, the victim, and the Appellant resided. Although the Office of the Public Defender was appointed to represent Frazier in the criminal proceeding, the assistant district attorney was not assigned to the case, although he was privy to information regarding the child abuse allegations and the living conditions of the Appellant's mobile home. Within ten days of learning the prosecutor's prior employment with the Office of the Public Defender, trial counsel filed an amended motion for new trial on July 16, 2003, alleging a conflict of interest. At the same time, he filed a notice of appeal in the case because the thirty days following the denial of the initial motion for new trial was about to expire. Although the notice of appeal document was already filed, trial counsel, however, discussed the conflict of interest issue with the State and the trial court and was assured that a hearing would be held on the issue. A hearing was conducted in August with the trial court concluding that no conflict of interest existed.[3] However, on appeal, a panel of this court declined to address the issue, finding it had been waived based upon the filing of the notice of appeal document, which deprived the trial court of jurisdiction to review the issue.

The Appellant testified that he only met with trial counsel four times in preparation for his criminal trial but did acknowledge that they spoke on the telephone every two to three days. The Appellant also acknowledged that trial counsel had reviewed discovery with him, though "not all of it." He further agreed that trial counsel had explained the elements of the offense of rape of a child and informed him as to who the State's primary witnesses were. According to the Appellant, trial

---

[2] It is unclear from the record before us what specific questions trial counsel asked which triggered or "opened the door" for the introduction of the living conditions of the Appellant's residence.

[3] Although a hearing was held by the trial court on the conflict of interest issue, no transcript of the hearing is included in this record.

counsel had not "done his job trying to find out" the necessary information to prepare for a defense, particularly with respect to discovery. The Appellant did acknowledge that he was aware of the pre-trial motions that counsel had filed to exclude certain evidence at trial. He asserted, however, that trial counsel did not discuss the court's rulings on those motions. The Appellant did acknowledge, however, that the trial court had explained its rulings to him. With regard to the possible defense witness, Flossie Richards, the Appellant testified that she could have testified that she was disabled and rarely left the Appellant's home, indicating that the Appellant was not left alone in the mobile home with the victim. Thus, the Appellant asserts Richards could have established that the Appellant did not have the opportunity to commit the crime for which he was convicted.

On January 20, 2005, the post-conviction court, by written order, denied the Appellant's petition. This appeal followed.

**Analysis**

On appeal, the Appellant raises the single issue of ineffective assistance of counsel. He specifically asserts that trial counsel was ineffective by: (1) failing to adequately consult with and prepare the Appellant for trial; (2) failing to present a defense witness; (3) opening the door to prejudicial testimony; and (4) failing to preserve the conflict of interest issue for appeal. To succeed on a challenge of ineffective assistance of counsel, the Appellant bears the burden of establishing the allegations set forth in his petition by clear and convincing evidence. T.C.A. § 40-30-110(f) (2003). The Appellant must demonstrate that counsel's representation fell below the range of competence demanded of attorneys in criminal cases. *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). Under *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984), the Appellant must establish (1) deficient performance and (2) prejudice resulting from the deficiency. The petitioner is not entitled to the benefit of hindsight, may not second-guess a reasonably based trial strategy, and cannot criticize a sound, but unsuccessful, tactical decision made during the course of the proceedings. *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). This deference to the tactical decisions of trial counsel is dependent upon a showing that the decisions were made after adequate preparation. *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

It is unnecessary for a court to address deficiency and prejudice in any particular order, or even to address both if the petitioner makes an insufficient showing on either. *Strickland*, 466 U.S. at 697, 104 S. Ct. at 2069. In order to establish prejudice, the petitioner must establish a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *State v. Burns*, 6 S.W.3d 453, 463 (Tenn. 1999) (quoting *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068).

The issues of deficient performance by counsel and possible prejudice to the defense are mixed questions of law and fact. *Id.* at 461. "[A] trial court's *findings of fact* underlying a claim of ineffective assistance of counsel are reviewed on appeal under a *de novo* standard, accompanied with a presumption that those findings are correct unless the preponderance of the evidence is otherwise."

*Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001) (citing Tenn. R. App. P. 13(d); *Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997)). However, *conclusions of law*, are reviewed under a purely *de novo* standard with no presumption that the post-conviction court's findings are correct. *Id.*

## I. Consultation and Preparation for Trial

On appeal, the Appellant asserts that trial counsel was ineffective in that he did not adequately consult with and prepare the Appellant for trial. Specifically, the Appellant alleges that he was dissatisfied with the substance and number of the four to five meetings he had with trial counsel. Additionally, he asserts that trial counsel failed to provide a complete copy of discovery and failed to sufficiently explain the discovery which was provided. Moreover, he contends that trial counsel did not adequately inform him of the defense theory of the case or provide explanations of the rulings of the trial court with regard to the pre-trial motions. According to the Appellant, this lack of communication and failure to provide discovery "hindered [his] ability to make informed decisions regarding the potential outcome of a jury trial in this matter."

Initially, we are constrained to note that trial counsel's testimony materially conflicted with many of the Appellant's contentions. As noted, trial counsel testified to at least seven to eight meetings, in addition to numerous telephone conversations. Moreover, trial counsel testified to additional meetings in preparation for the juvenile case, which was based upon the same facts. Counsel testified that he explained the elements of the offense to the Appellant and extensively discussed the theory of defense which he planned to utilize at trial. Trial counsel also stated that he reviewed the State's evidence with the Appellant which was obtained through discovery.

In its order denying post-conviction relief, the court found that the Appellant's allegation of failure to consult with and prepare for trial had "no merit," noting that trial counsel specifically testified:

> . . . he discussed the facts and elements of the case with [the Appellant]; they discussed State witnesses and any witnesses who might be favorable to [the Appellant]; they discussed numerous motions being filed and argued on [the Appellant's] behalf; they discussed trial strategy and discussed the worst scenario for [the Appellant] upon convictions.

Clearly, the post-conviction court accredited trial counsel's testimony over that of the Appellant's. Questions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial court as the trier of fact, and those determinations are conclusive on appeal unless the evidence preponderates otherwise. *Odom*, 928 S.W.2d at 23. We find nothing in the evidence before us which preponderates against the post-conviction court's determinations. Thus, the Appellant has failed to show by clear and convincing evidence that trial counsel's pre-trial consultations constituted deficient performance under prevailing professional norms.

## II.  Failure to Call Defense Witness

Next, the Appellant asserts that trial counsel was ineffective by failing to call a potential defense witness, Flossie Richards, who the Appellant asserts could have testified that she lived with the Appellant and the victim, and rarely left the home, thereby inferring that the Appellant would not have had the opportunity to commit the sexual assault as alleged.  The Appellant argues Richards' testimony was particularly critical in light of the fact that trial counsel's theory of defense involved a challenge to the victim's credibility.   The Appellant contends that trial counsel's failure to fully investigate Richards' potential testimony "hindered [his] ability to present a complete defense."

In denying relief, the post-conviction court again accredited the testimony of trial counsel, specifically noting that trial counsel "testified that he did not call Ms. Richards based upon the understanding that she was present in the trailer only when the children were removed, and not at the time of the allegations of abuse."   As previously noted, questions of credibility are matters entrusted to the trial court and are conclusive on appeal unless the evidence preponderates otherwise. *Odom*, 928 S.W.2d at 23.  Nothing in the record preponderates against the findings, as trial counsel cannot be held deficient for failing to call a witness who had no factual knowledge of the events. *See Id*.  While the record in this case does establish that Ms. Richards was deceased at the time of the post-conviction hearing, the Appellant still bears the burden of establishing for the record through other means of proof the allegations of deficient performance as alleged.  We are without authority to vacate a conviction based upon conjecture or rank speculation.  With the exception of the Appellant's self-serving, and somewhat confusing, testimony, there is no evidence before us which demonstrates that Ms. Richards resided in the Appellant's mobile home on the date of the crime nor evidence that Ms. Richards would have testified that the Appellant was never alone with the victim.  Accordingly, this claim is without merit.

## III.  Opening the Door to Prejudicial Evidence

Next, the Appellant contends that trial counsel's performance was deficient by "opening the door" to the introduction of prejudicial evidence regarding the deplorable living conditions in which the victim lived.  Prior to trial, trial counsel filed motions to preclude the admission of this evidence.  Following a hearing on the motion, the trial court ruled that the State would not be allowed to introduce the evidence unless it became relevant during the course of the trial.  The court informed the parties that a jury-out hearing would be held at the appropriate time if the issue arose.  During the course of the trial, in an effort to discredit the victim's memory, trial counsel pursued a line of questioning regarding the mobile home where the victim and the Appellant resided.  Following a hearing, the State was allowed to introduce evidence, through the victim and two DCS workers, regarding the conditions.  The Appellant now contends that, but for trial counsel's "opening the door," the jury would not have heard the inflammatory evidence.

In denying relief on this ground, the post-conviction court found:

The defense strategy was two-fold: to attack the memory and credibility of [the victim] and to attack an erroneous time frame from the abuse, first adopted by the State. Attacking the memory of [the victim] as to time, places and events proved fatal to [the Appellant]. Cross-examination as to more than one trailer in which [the victim] lived led to prejudicial testimony of deplorable living conditions at the time of the abuse. [Trial Counsel] testified that he discussed trial strategy with [the Appellant]. The Court will not second-guess the sound trial strategy of a well-qualified, experienced attorney.

Again, we find nothing in the record to preponderate against the post-conviction court's findings. Trial counsel specifically testified that his cross-examination of the victim with regard to this matter was a tactical decision, which he repeatedly discussed with the Appellant. Based upon the chosen theory of defense, *i.e.*, attacking the credibility of the victim, trial counsel believed that this line of questioning was vital to the defense strategy. Trial counsel testified that he believed that the evidence he elicited, that the victim had lived in another trailer, was "key information" which would aid in the Appellant's defense.

The petitioner is not entitled to the benefit of hindsight, may not second-guess a reasonably based trial strategy, and cannot criticize a sound, but unsuccessful, tactical decision made during the course of the proceedings. *Adkins*, 911 S.W.2d at 347. While trial counsel's decision in this matter did result in the admission of prejudicial testimony, he specifically testified that he could not anticipate how the trial court would rule regarding its admission when he cross-examined the victim. Trial counsel stated that he believed, that although he was "walking a tightrope," he had a persuasive argument to present during the jury-out hearing. Review reveals that trial counsel was pursuing a well reasoned defense strategy in the case, and the tactical decision at issue here was made after adequate preparation. *See Cooper*, 847 S.W.2d at 528. We are not permitted to second-guess trial counsel's tactical decision.

## IV. Waiver of Conflict of Interest Issue

Finally, the Appellant contends that trial counsel was ineffective by allowing a possible conflict of interest issue to be waived on appeal. The Appellant does not dispute that trial counsel was not made aware of the possible potential conflict of interest issue until after the motion for new trial was denied. The Appellant asserts, however, that the Appellant was provided with the information "7 to 10 days prior to the expiration of the 30-day time period in which to file [the] Appellant's Notice of Appeal." The Appellant argues that trial counsel did not immediately file a motion to amend the prior motion for new trial or request an expedited hearing on the issue. The Appellant contends that trial counsel simply allowed the time to lapse and filed the motion to amend the motion for new trial and the notice of appeal concurrently, resulting ultimately in the waiver of the issue on appeal.

The conflict of interest issue, as recited by this court on direct appeal, is as follows:

. . . whether the trial court erred in "denying the Appellant's 'Motion for New Trial' based on the fact the prosecutor for the State . . . had previously worked for the Office of the Public Defender, who represented the girlfriend of the Appellant in her case, and was present when she was interviewed concerning the case, which was based on the same facts alleged against the Appellant in this case."

*Whatley*, No. M2003-01773-CC-R3-CD.

The post-conviction court found that trial counsel was not deficient in his actions, specifically finding:

At the time [trial counsel] filed his Amended Motion for New Trial and contemporaneous Notice of Appeal, the deadline for perfecting an appeal was closing in. Right or wrong, this Court did conduct a hearing, allowed evidence and ruled that there was no conflict of interest. [Trial counsel] testified that he learned of a possible conflict of interest on the part of [the assistant district attorney] subsequent to the denial of Motion for New Trial. This Court finds that [trial counsel] took immediate steps to do everything he could do to protect and preserved the rights of [the Appellant].

Proof of deficient representation by failing to perform, in this case "failing to preserve the issue of conflict of interest on appeal," requires more than a bare allegation of some lost potential benefit. With regard to this allegation, the Appellant is required to prove by clear and convincing evidence: (1) that the conflict of interest issue was meritorious; and (2) that there was a reasonable probability that the criminal trial would have concluded differently if counsel had performed as suggested.

Typically, in determining whether to disqualify an attorney in a criminal case, the trial court must first determine whether the party questioning the propriety of the representation has met its burden of showing that there is an actual conflict of interest. *State v. White*, 114 S.W.3d 469, 476 (Tenn. 2003). An actual conflict of interest is usually defined in the context of one attorney representing two or more parties with divergent interests. *State v. Tate*, 925 S.W.2d 548, 552 (Tenn. Crim. App. 1995). Clearly, the scenario before us does not present the situation where one attorney is simultaneously representing two or more parties with divergent interests. Nonetheless, a conflict of interest may arise from successive representations stemming from the same or a substantially related proceeding.

Rule 1.9(a) of the Rules of Professional Conduct provides:

A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client, unless the former client consents in writing after consultation.

Tenn. S. Ct. R. 8, RPC 1.9(a).[4]

It is obvious that the representation by the Office of the Public Defender[5] of Lisa Frazier for child abuse and the prosecution of the Appellant for child rape did not arise from the same criminal proceeding. The issue, however, of whether the two criminal proceedings are "substantially related" poses a closer question. While the proof established that the Appellant was a named defendant in both criminal proceedings and that the parties' minor child was the victim in each of the two cases, nonetheless, we conclude that the two criminal proceedings were not substantially related. *See Farris Genner Morris v. State*, No. W2005-00426-CCA-R3-PD (Tenn. Crim. App. at Jackson, Oct. 10, 2006). The two criminal cases were separate in time and nature, and there is nothing in the record before us which suggests that at the time of the public defender's representation of Lisa Frazier that criminal charges against the Appellant for child rape were contemplated. Moreover, the record fails to establish that the assistant public defender, now prosecutor, ever acquired confidential information from Lisa Frazier, which could have been or was used in the prosecution of the Appellant. Finally, we would note that any prosecutor within the District Attorney General's office would have been privy to any information developed by the Department of Children's Services investigation. As such, no actual conflict of interest was created which required disqualification of the former assistant public defender, now prosecutor. Accordingly, no deficient performance resulted from trial counsel's failure to preserve the conflict of interest issue in the direct appeal of his conviction.

## CONCLUSION

Based upon the foregoing, the Maury County Circuit Court's denial of the Appellant's petition for post-conviction relief is affirmed.

_____
DAVID G. HAYES, JUDGE

---

[4]This case proceeded to trial on March 18, 2003. Effective March 1, 2003, the Code of Professional Responsibility was replaced by the Tennessee Rules of Professional Conduct, which is codified in Tennessee Supreme Court Rule 8.

[5]The fact that the former assistant public defender, now prosecutor, was not the assistant public defender specifically assigned to represent Lisa Frazier is of no consequence if an actual conflict of interest had existed, because "a lawyer shall not knowingly represent a person in the same or substantially related matter in which a firm with which the lawyer formerly was associated had previously represented a client whose interests are materially adverse . . . ." Tenn. S. Ct. R. 8, RPC 1.9 (b).